[No. C030427. Third Dist. June 15, 1999.]

JOHN OCHOA, Plaintiff and Appellant, v.
CALIFORNIA STATE UNIVERSITY, SACRAMENTO, Defendant and
Respondent.

---

**COUNSEL**

Smith & Burstein and Jack B. Burstein for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Darryl L. Doke and Steven M. Gevercer, Deputy Attorneys General, for Defendant and Respondent.

---

**OPINION**

**SIMS, J.**—Plaintiff John Ochoa appeals following the dismissal of his personal injury complaint against defendant California State University, Sacramento on summary judgment. He contends that a triable issue of fact exists as to whether defendant had a duty to protect him against the injury he suffered at the hands of an opposing player in an intramural soccer game.[1] We disagree. We also find that summary judgment could appropriately have been granted on an alternative theory raised by defendant. Accordingly, we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In the evening of April 15, 1996, an indoor intramural soccer game was held at California State University, Sacramento (CSUS), between two teams of CSUS students: plaintiff's team, which represented Sierra Hall, a student dormitory, and a team representing the Hmong University Student Association (HUSA), on which codefendant Thoa played.

The game was the opening contest in an intramural competition held under the auspices of Recreational Sports (Rec Sports), which is described in the "Campus Recreation Guide" as "a service program of the CSUS Student Activities Office." Rec Sports is primarily funded by student fees allocated by Associated Students Inc. (ASI), a nonprofit corporation which represents students in matters of CSUS governance and provides them with services and grants, but is a separate corporate entity from CSUS. The referees of the soccer game and the "student supervisor" who oversaw them were employees of ASI.

---

[1] The player who inflicted the injury, Sou Vanh Thoa, was named as a codefendant but is not a party to this appeal.

The student supervisor had refereed approximately 30 soccer games and had previously stopped games that appeared on the verge of violence, as Rec Sports regulations authorized him to do. There were two referees on the field during the game, each covering half the field.

According to the referees, the game was uneventful up until just before the altercation between plaintiff and Thoa, which took place during the second half. According to Thoa, however, in the five to ten minutes before the altercation there was escalating roughness, with uncalled fouls, pushing and shoving, and other forms of combative conduct, and the referees did not control these problems.

Shortly after a HUSA player tried to score, the Sierra Hall goalie ran forward and slide-tackled the HUSA player. They appeared to be struggling. According to Thoa, the referees did not blow the whistle or shout "stop."

Thoa approached the combatants. Thinking he saw an opposing player's fist swinging toward him, Thoa threw a punch. It caught plaintiff on the jaw. According to the referee nearest to the scene, Thoa's act happened too quickly for him to intervene, but he pulled Thoa and plaintiff apart as soon as the punch was thrown.

The referees immediately stopped the game and called the police.

Plaintiff sued CSUS in tort, alleging that CSUS negligently failed to supervise the game "and to instruct the participants therein relative to their conduct . . . ." Thoa's battery of plaintiff was the direct, proximate and foreseeable result of such negligence. Therefore, CSUS was liable to plaintiff pursuant to Government Code sections 815.2, subdivision (a), 815.4, and 820.[2] (All further undesignated section references are to the Government Code.)

After answering the complaint, CSUS moved for summary judgment on three grounds: 1. CSUS had no duty to plaintiff. 2. Even if it had a duty, it did not breach that duty. 3. CSUS was immune from liability under section 831.7, which provides in part:

"(a) Neither a public entity nor a public employee is liable to any person who participates in a hazardous recreational activity . . . for any damage or injury to . . . persons arising out of that hazardous recreational activity.

---

[2]Section 815.2, subdivision (a), makes public entities liable for injuries caused by employees' acts or omissions within the scope of their employment. Section 815.4 does the same as to the acts or omissions of public entities' independent contractors. Section 820 generally provides for the liability of public employees.

"(b) As used in this section, 'hazardous recreational activity' means a recreational activity conducted on property of a public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or spectator.

" 'Hazardous recreational activity' also means:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) . . . body contact sports (i.e., sports in which it is reasonably foreseeable that there will be rough bodily contact with one or more participants) . . . ."

The trial court granted CSUS's motion on the first ground, finding under the authority of *Crow* v. *State of California* (1990) 222 Cal.App.3d 192 [271 Cal.Rptr. 349] that CSUS had no duty to plaintiff. The court did not reach CSUS's other defenses.

DISCUSSION

I

Summary judgment is properly granted to a defendant who shows that one or more essential elements of the plaintiff's cause of action cannot be separately established or that there is an affirmative defense which bars recovery, unless the plaintiff sets forth specific facts showing a triable issue of material fact as to that cause of action or defense. (Code Civ. Proc., § 437c, subds. (n), (o)(2).)

Plaintiff's opening brief attacks only the trial court's reason for granting summary judgment, ignoring the other two grounds raised by CSUS's motion. ■ Since this court may affirm the grant of summary judgment on any ground properly raised below, whether or not addressed by the trial court, plaintiff's strategy is ill-advised. (*Salazar* v. *Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522].)

CSUS renews all three grounds in its respondent's brief. Plaintiff belatedly offers argument on the latter grounds in his reply brief. We could refuse to consider those untimely arguments. (See *Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) However, since plaintiff's belated argument did not deprive CSUS of an opportunity to address the issues (*ibid.*), we shall address his contentions as to the grounds on which summary judgment is properly affirmed.

## II

In *Crow* v. *State of California, supra,* 222 Cal.App.3d 192, this court rejected the claim of an adult college student, who was beaten by an intoxicated fellow student in a dormitory, that the defendant university was liable to the plaintiff in tort for negligently operating, maintaining, and supervising the dormitory. (*Id.* at pp. 196-197.) We held that the usual rule of nonliability for the criminal conduct of a third party, absent a special relationship between the plaintiff and the defendant which imposed a duty on the defendant to protect the plaintiff from the type of harm that occurred, applied on these facts. (*Id.* at pp. 208.)

We specifically found that the plaintiff's affiliation with CSUS as a student did not create a special relationship imposing a duty of care on CSUS. Unlike high school students, whose attendance is compelled and over whom school officials have direct responsibility while the students are at school, adult college students attend school and participate in school activities voluntarily. (*Crow* v. *State of California, supra,* 222 Cal.App.3d at pp. 208-209.) Furthermore, since college administrators have abandoned in loco parentis supervision of adult students and have recognized the students' rights to control and regulate their own lives, colleges and universities may no longer be charged with a general duty of care to supervise student activities. (*Id.* at p. 209; see also *Baldwin* v. *Zoradi* (1981) 123 Cal.App.3d 275, 287-291 [176 Cal.Rptr. 809].)

█ Plaintiff contends that *Crow* does not control this case because CSUS expressly took responsibility for supervising the events at issue, thus creating the special relationship and duty to the participants which we found not to exist in *Crow*. However, he cites no authority holding that a college or university forms a special relationship with its adult students, giving rise to a duty to protect them from the criminal acts of third parties, merely by organizing and sponsoring an intramural activity, and we are aware of no such authority.

Plaintiff quotes provisions in the CSUS-issued referees' handbook which authorize referees to eject disorderly participants and spectators, to penalize their teams, and to call in the campus police to control physically abusive or threatening participants and spectators. But if CSUS's bestowal of such "police powers" on referees created a special relationship between CSUS and its adult students who participate in intramural events, then every local government would create a special relationship with its citizens merely by establishing a police force. The law is otherwise. (See, e.g., *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197 [185 Cal.Rptr. 252, 649 P.2d 894].)

Finally, we agree with CSUS that general tort law and public policy militate against creating the duty plaintiff argues for. Applying the well-known *Rowland* v. *Christian* factors,[3] as plaintiff urges us to do, we find only two that count in his favor. First, it was certain that the plaintiff suffered injury. Second, the harm plaintiff suffered, a punch thrown by a participant in the course of a hotly contested soccer game, was reasonably foreseeable. However, the connection between the defendant's alleged conduct (negligent refereeing) and the plaintiff's harm was not particularly close. The failure to call every foul in a soccer game, even if negligent, is not particularly blameworthy. It is unclear how the policy of preventing future harm would be fostered by finding a special relationship between universities and the participants in their intramural events, since it is unclear how those events could proceed if every injury suffered by a participant might expose the university to liability. The extent of the burden on the defendant created by a requirement that it protect every intramural participant from harm at the hands of every other would be extraordinary, as would be the likely increase in the defendant's insurance premiums (if it could still obtain insurance for intramural events). Finally, the likely consequences to the community would be the abandonment of intramural sports by colleges and universities, which would serve no one's interest.[4]

Plaintiff has shown no basis on these facts for an exception to the *Crow* rule that institutions of higher education have no duty to their adult students to protect them against the criminal acts of third persons. Thus, we conclude that the trial court correctly granted summary judgment on this ground.

### III

■■ We also agree with CSUS that section 831.7 immunizes it from liability on these facts.

As noted, the statute immunizes a public entity from liability for injury to any person "who participates in a hazardous recreational activity . . . ." Hazardous recreational activities include "body contact sports (i.e., sports in which it is reasonably foreseeable that there will be rough bodily contact with one or more participants) . . . ." (§ 831.7, subd. (b)(3).) ■■ Where the facts are undisputed, the determination whether an activity is

---

[3] *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].

[4] Plaintiff also cites the additional factors that pertain to public entities under *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at page 203: " '. . . "the extent of [the agency's] powers, the role imposed upon it by law and the limitations imposed upon it by budget . . . ." ' " He does not explain how these factors help his argument, and we do not see how they could.

a "hazardous recreational activity" under the statute is a question of law for the court. (*Yarber* v. *Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, 1519 [6 Cal.Rptr.2d 437].)

In *Yarber* v. *Oakland Unified School Dist.*, the appellate court held that the statute provided immunity to the defendant school district where the plaintiff suffered injury in an after-hours adult basketball game at a school gymnasium rented from the school by the players. The game was not sanctioned or supervised by the defendant, and no referees officiated. The plaintiff was injured when he was hit in the act of shooting and propelled into an unpadded concrete wall. (4 Cal.App.4th at p. 1518.)

The court found that full-court basketball is a "body contact sport" and therefore a "hazardous recreational activity" under the statute because it "is an intensely physical game fraught with risk of serious injury. Body blocks, charges, fouls, intentional or not, and accidental collisions with other players are routine and expected. In fact, the rules recognize this and assess penalties for fouls against one's opponent. Since none of the players wear any protection, such bodily contact takes a physical toll . . . ." (*Yarber* v. *Oakland Unified School Dist., supra,* 4 Cal.App.4th at pp. 1519-1520.)

In two more recent decisions, however, Courts of Appeal have found no immunity for defendant school districts. Plaintiff relies on these decisions.[5] As we shall explain, his reliance is misplaced.

In *Acosta* v. *Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471 [37 Cal.Rptr.2d 171], a divided court held that section 831.7 did not immunize a school district where a high school gymnast was injured while practicing under the supervision of his coach in the school gymnasium after school. (31 Cal.App.4th at p. 474.) The majority reasoned that, although gymnastics was a hazardous activity within the meaning of the statute (*id.* at p. 477, fn. 3), the training session in which the plaintiff participated was not "recreational," but rather part of a "school-sponsored extracurricular sports program[]" and essentially similar to training sessions the coach conducted for his team members at other times. (*Id.* at pp. 478-479.) In the majority's view, the Legislature did not intend by enacting section 831.7 to immunize school districts from liability for negligent supervision of students in extracurricular sports, a long-established basis for liability in tort law. (31 Cal.App.4th at pp. 477-478.)

---

[5]He also purports to rely on three decisions by New York appellate courts. (*Hores* v. *Sargent* (1996) 230 A.D.2d 712 [646 N.Y.S.2d 165]; *Henig* v. *Hofstra University* (1990) 160 A.D.2d 761 [553 N.Y.S.2d 479]; *Lamphear* v. *State* (1982) 91 A.D.2d 791 [458 N.Y.S.2d 71].) None of these decisions construe any New York law corresponding to section 831.7. *Henig* and *Lamphear* address only the issue of assumption of risk, which is not raised here. *Hores* decides only that a triable issue of fact exists as to duty. Thus none of these decisions assist plaintiff on the issue of section 831.7 immunity.

In *Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218 [38 Cal.Rptr.2d 35], the Court of Appeal held that section 831.7 did not immunize a school district from liability for injuries sustained by a junior high school student during a soccer game conducted as part of a physical education class. (32 Cal.App.4th at p. 220.) The court distinguished *Yarber* v. *Oakland Unified School Dist., supra,* 4 Cal.App.4th 1516, because the activity in this case involved a minor student rather than an adult and took place in a required class rather than an after-hours voluntary event. (*Iverson, supra,* 32 Cal.App.4th at pp. 226-227.) Though the court also found the facts in *Acosta* v. *Los Angeles Unified School Dist.,* 31 Cal.App.4th 471 distinguishable (*Iverson, supra,* 32 Cal.App.4th at p. 226), it adopted what it characterized as the *Acosta* court's reasoning that section 831.7 was not intended to apply to "activities that are a part of a school's physical education program" because of the well-established duty of school districts "to supervise the conduct of children on school grounds . . . ." (*Iverson, supra,* 32 Cal.App.4th at p. 227.)

In our case, as in *Yarber,* the plaintiff was an adult taking part in a voluntary activity. Because colleges and universities have no duty to supervise the activities of their adult students (*Crow* v. *State of California, supra,* 222 Cal.App.3d at p. 209; *Baldwin* v. *Zoradi, supra,* 123 Cal.App.3d at pp. 287-291), the duty of supervision required of school districts, which the courts in *Acosta* and *Iverson* found to override section 831.7, does not do so here. Like full-court basketball, soccer is "an intensely physical game fraught with risk of serious injury" in which rough contact is "routine and expected," the rules assess penalties for fouls, and the players wear no significant protection. (*Yarber* v. *Oakland Unified School Dist., supra,* 4 Cal.App.4th at pp. 1519-1520.) Because CSUS did not require or expect plaintiff to participate in the intramural soccer game, he is not similarly situated to the gymnast in *Acosta* whose coach expected him to participate in the training session as a condition of membership on an interscholastic team (*Acosta* v. *Los Angeles Unified School Dist., supra,* 31 Cal.App.4th at p. 479), nor to the student in *Iverson* who had to play in the soccer game held as a part of his physical education class. (*Iverson* v. *Muroc Unified School Dist., supra,* 32 Cal.App.4th at p. 220.)

Plaintiff makes no argument that *Yarber* is distinguishable because he suffered a deliberate battery unlike the plaintiff in *Yarber* whose injury was caused by an accidental collision. If this argument had been made, we would reply that fisticuffs between participants in a soccer game is a foreseeable event embraced within the concept of a "hazardous recreational activity" under section 831.7, so that immunity is properly the rule.

Under all the circumstances, we conclude that plaintiff's activity was a "hazardous recreational activity" as a matter of law, giving CSUS absolute

immunity from liability for his injury. The trial court could properly have granted summary judgment on this ground also.

### DISPOSITION

The judgment is affirmed. Defendant shall receive its costs on appeal.

Scotland, P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 22, 1999.