[No. C041725. Third Dist. Sept. 2, 2003.]

ABIGAIL STOCKINGER, Plaintiff and Appellant, v.
FEATHER RIVER COMMUNITY COLLEGE et al., Defendants and
Respondents.

## COUNSEL

Law Offices of Gregory B. Byberg and Gregory B. Byberg for Plaintiff and Appellant.

Angelo, Kilday & Kilduff, J. Scott Smith and Laurence L. Angelo for Defendants and Respondents.

## OPINION

**SIMS, J.**—Plaintiff Abigail Stockinger, a college student enrolled in a class designed to train guides for horse-packing trips, was injured off campus while riding in the open bed of a classmate's pickup truck, as they worked on an assignment to map a route for a later class trip. This appeal involves plaintiff's suit against defendants Feather River Community College and college instructor Russell Reid, alleging negligence in planning and supervising the class assignment. The classmate who was driving at the time of the accident is not a party to this action. Plaintiff appeals from summary judgment entered in favor of defendants. Plaintiff contends the trial court improperly excluded her evidentiary submissions and erred in concluding her claims were barred by various statutory immunities and assumption of the risk.

We shall conclude that most of plaintiff's evidentiary contentions are without merit, and even assuming some evidence should have been admitted, the trial court correctly ruled defendants had no liability pursuant to Education Code section 87706,[1] which limits liability when students are not on school property.     ■     As a general rule, a college may require college students to complete an off-campus assignment without specifying how the students are to transport themselves, and without assuming a duty of care with respect to the mode of transportation selected by the students.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2001, plaintiff filed her lawsuit against defendants, alleging she was injured on May 5, 2000, at United States Forest Service Road 24N28 (Battle Springs Road), in an unincorporated district of Quincy in Plumas County, 6.1 miles south of Bucks Lake Road. The complaint alleged defendants "failed to exercise reasonable care in planning and [were] so negligent in organizing, entrusting and supervising a mandatory off premises school sponsored activity, so as to cause physical and emotional injuries to Plaintiff. Plainitff's [sic] participation in the subject off premises school sponsored activity was required and said activity was not a field trip or excursion as contemplated by [section] 87706 [(see fn. 1, ante)] and California Code of [R]egulations Title 5, Section 55450.[2] Defendant public entity and public employee are being sued pursuant [to] Government Code Section 820 [public employee is liable for injury caused by his act or omission except as otherwise provided by statute]."

Defendants moved for summary judgment, asserting plaintiff's injuries were caused by the reckless driving of her classmate, Richard McGrath (who was not named as a defendant in this lawsuit), and by plaintiff's own decision

---

[1] Undesignated statutory references are to the Education Code. Section 87706 provides: "Notwithstanding any other provision of this code, no community college district, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any student of the public schools at any time when such student is not in [sic] school property, unless such district has undertaken to provide transportation for such student to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances.

"In the event of such a specific undertaking, the district shall be liable or responsible for the conduct or safety of any student only while such student is or should be under the immediate and direct supervision of an employee of such district or board."

[2] Despite section 87706's qualified provision for liability for school-sponsored activities, there is no liability for the subset of activities that qualify as "field trips or excursions," because students who participate in field trips and excursions are deemed to have waived any claims for injuries arising from the trips, under California Code of Regulations, title 5, section 55450. (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 827 [90 Cal.Rptr.2d 709] [harmonizing § 87706 and Cal. Code Regs., tit. 5, § 55450].)

to ride unrestrained in the open bed of McGrath's truck despite her admitted knowledge that it was dangerous to do so. Defendants asserted that, as against them, there was no duty, no breach, and no causation. Defendants further asserted plaintiff's claim against them was barred by the statutory limitation of liability for college students while off campus, pursuant to section 87706. (See fn. 1, *ante*.)[3]

Reid submitted a declaration stating he was the instructor of the PACK 108 course, which taught practical skills necessary in the organization and implementation of a pack trip. The PACK 108 course had a "homework"[4] assignment in which students had to map, plan, and organize a potential three-day pack trip. After the assignment was completed, Reid would accompany the students on a three-day pack trip on May 12 through 14, 2000, perhaps utilizing the students' maps.

The course assignment sheet stated the assignment (listed as Assignment # 2), due Monday, May 8, 2000, was for the class to divide themselves up into groups, with two to four students per group, and for each group to map out a route for a three-day "pack trip," starting from the college's stable area, traveling approximately six miles the first day, eight to 10 miles the second day, and five miles the third day. The students had to locate two places to camp overnight, with water and grass and secluded from the public. The assignment called for the students to find locations, explore, drive, draw a map, and write a summary. The assignment sheet stated, "You must walk/drive the entire trip (we will have to drop hay off at either camp site), so be sure to check out each spot *carefully*!" Instructor Reid verbally instructed the students that they could also ride horses in performing the assignment.[5]

The assignment sheet was distributed to students at the beginning of the semester, and the students had all semester in which to do it. The assignment sheet warned the students not to procrastinate.

---

[3] Defendants also asserted plaintiff's claim was barred by express assumption of the risk (a written release signed by plaintiff, which she argues was limited to activities involving horses), implied assumption of the risk, and the statutory immunity for discretionary actions/omissions by public employees (Gov. Code, §§ 820.2 [public employee is not liable for conduct resulting from an exercise of discretion], 815.2 [public entity is not liable if its employee is immune from liability].) We need not address those matters.

[4] Plaintiff disputes the word "homework," asserting the work could not be done at "home." However, the common definition of "homework" includes "schoolwork to be done outside the classroom." (Webster's New World Dict. (3d college ed. 1988) p. 646.) When asked in deposition whether the assignment "was basically a homework assignment," plaintiff answered "Um, yes."

[5] Reid also attested he verbally instructed the students they could use a mountain bike, but plaintiff disputes this assertion. We see no consequence to this dispute.

Reid attested that, in recognition that these students may one day guide others on pack trips and be responsible for the safety of others, the purpose of the assignment was "to provide students an opportunity to develop the requisite leadership and practical skills for planning, implementing, and/or guiding a pack trip of their own. My students were mainly young adults, such as the plaintiff (age 20). Such adults in this field must be given responsibilities in order to learn responsibility for themselves and others. Thus, the students were given the liberty to complete Assignment # 2 on their own terms without direct instructor involvement." The students were free to select with which students they wanted to work, but each group had to have at least one person with experience. Plaintiff had experience, having successfully completed the PACK 108 course twice.

Reid was not involved in the selection of plaintiff's group,[6] was not involved in the planning of her group's outing, did not undertake to provide transportation for the assignment, and did not supervise or control the operation of plaintiff's group. Reid attested he was not aware plaintiff's group intended to use McGrath's vehicle, was not aware of McGrath's driving record, and was not aware plaintiff and another student would choose to ride without seat belts in the bed of McGrath's truck.

In the 15 years that Reid has given this assignment, no student other than plaintiff had ever been seriously injured in performing the assignment.

Defendants submitted excerpts of plaintiff's deposition, in which she said Reid did not influence who joined which group, and Reid did not supervise plaintiff's group in its operation. Although each group was supposed to be limited to a maximum of four persons, plaintiff's group had five, because it was the last group formed. Plaintiff's group consisted of plaintiff, Richard McGrath, Jeanette Graves, Lilly Wren, and Joellen Chunn. A few days before the accident, plaintiff and Chunn asked Reid if they could be excused from the assignment to attend a rodeo. He said their group needed them for their experience, and their failure to complete the assignment would be detrimental to their grade for the class or for the assignment (plaintiff could not remember which one). Plaintiff concluded her participation was required. Chunn skipped the assignment and went to the rodeo, yet did not fail the class.

Plaintiff in her deposition also testified her group concluded they needed a four-wheel-drive vehicle for the assignment because it was "open country." Only McGrath had a four-wheel-drive vehicle. His vehicle (a 1969 Ford

---

[6] By referring to *plaintiff's group*, we mean the group of which plaintiff was a member. Though plaintiff was the one with experience, there is no indication that plaintiff or any other member was recognized as leader of the group.

F-250) .was a flatbed pickup truck with only three seats in the front (with perhaps only two seat belts) and no seats or seat belts in the flatbed. On the morning of the accident, plaintiff and Wren drove in Wren's car to the start of the dirt road they would travel. It did not occur to the group that anyone would have to ride in the bed of the pickup until they met at the start of the dirt road.

Plaintiff testified that, before the accident, she never told Reid that her group would have to use McGrath's pickup, and she did not recall anyone ever telling Reid that someone would have to ride in the bed of McGrath's truck. No one in her group ever asked to use school vehicles.

Although plaintiff knew it was dangerous to ride in the bed of a pickup truck and knew she would not have any seat belt protection,[7] she agreed to do so (as did Graves). Wren sat in front with the driver.

No one in plaintiff's group was familiar with that road, though plaintiff was familiar with the area.

After driving for a few minutes, McGrath started driving too fast and skidding around corners. Plaintiff complained, and he slowed down, but soon picked up the speed again. She estimated his speed at 35 miles per hour, which she considered unsafe. However, she did not ask him again to slow down. She did not know why she stayed silent. The truck skidded, hit something, and plaintiff was thrown from the vehicle. The accident left her a paraplegic.

When asked in deposition what she thought Reid did wrong, plaintiff testified Reid required her participation in the mapping and did not provide a school vehicle.

Defendants also submitted a declaration from United States Forest Service Project Engineer Charles Carter, attesting the road on which plaintiff was injured, United States Forest Service Road 24N28 in Plumas County, was a dirt and gravel road which could be easily navigated by an ordinary two-wheel-drive passenger vehicle or sedan driven with due care. Four-wheel drive was not needed. The road was wide enough for opposing vehicles to pass when there was no snow (as was the case in May 2000).

Plaintiff opposed summary judgment.

---

[7] Plaintiff testified she was aware it was against the law to drive without a seat belt. In opposing summary judgment, plaintiff claimed the law does not require seat belts on United States Forest Service roads. We need not address this matter, because it is without consequence.

In opposition to summary judgment, plaintiff submitted her own declaration and excerpts from her deposition, but the trial court sustained defendants' evidentiary objections to those items, and plaintiff does not challenge those evidentiary rulings on appeal. We therefore presume that those evidentiary rulings were correct (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1015 [120 Cal.Rptr.2d 281]), and we disregard those excluded items.

Plaintiff submitted Reid's responses to requests for admissions, admitting he did not inspect McGrath's vehicle or driving record, did not offer safety instruction on driving vehicles off paved roads, and did not ask how a group would fit in McGrath's vehicle. Reid also admitted he was aware the college had vehicles available for school use that could fit more than three persons, and he did not ask to use these vehicles for this assignment.

Plaintiff submitted transcripts of three tape-recorded telephone conversations between plaintiff's investigator Kara Wayne and McGrath, Graves (who was the other person riding in the bed of the pickup), and Reid. Each transcript was accompanied by a declaration from Wayne stating it was a true and complete reproduction of the conversation. Each transcript reflected that at the end of the conversation, Wayne asked, "Do you declare under penalty of perjury the statements you made on this recording are true and correct?," to which McGrath and Graves responded affirmatively, and Reid responded, "To the best of my knowledge."

McGrath's interview included statements that Reid knew McGrath would be driving and knew McGrath only had seats for two or three in the vehicle. Graves said in her interview that she did not believe defendants knew McGrath would be driving, she did not know whether defendants knew students would be riding in the back of a truck, but it was a common thing to do when finding a route for the pack trip. Reid said in his interview that he was not aware who was going to be driving, was not aware any student would be riding in the back of a truck, and did not check McGrath's driver's license or proof of insurance.

Defendants made evidentiary objections to the transcripts of telephone conversations and accompanying declarations by plaintiff's investigator, on the ground they contained inadmissible hearsay.

Defendants' reply papers to plaintiff's opposition to summary judgment also contained a supplemental declaration from Reid, attesting that the college-owned vehicles are two-wheel-drive vans and are not available for use in homework assignments. Reid also refuted plaintiff's characterization of the target area as "wilderness." Reid attested, "The general area for our spring pack trips is intentionally planned not to be in a wilderness area. For

safety and teaching effectiveness, the horseback riding associated with pack trips is designed for beginning and intermediate riders on flat graveled roads."

The trial court sustained defendants' evidentiary objections and excluded the recorded statements of Reid, McGrath, and Graves, and the accompanying declarations of plaintiff's investigator.

The trial court granted summary judgment to defendants for the following reasons:

1. Defendants had no duty to protect plaintiff from her choice to sit in the back of an open pickup truck without a seat belt and endure the reckless driving of nonparty Richard McGrath during the subject scouting trip, since these actions were not reasonably foreseeable.

2. Defendants were immune from liability under section 87706 (see fn. 1, *ante*). There was no contention or evidence triggering the exemption from immunity, i.e., that plaintiff was or should have been under the immediate and direct supervision of a school district employee while on the scouting trip. Indeed, plaintiff's counsel admitted that plaintiff was not relying on this exemption from immunity.[8]

3. The trial court also determined plaintiff's claim was barred by primary assumption of risk and the immunity for discretionary activity (Gov. Code, §§ 815.2, 820.2)—matters we need not address.

Plaintiff filed a notice of appeal from the (nonappealable) order granting summary judgment (*Modica v. Merin* (1991) 234 Cal.App.3d 1072 [285 Cal.Rptr. 673]), but later filed a timely amended notice of appeal from the judgment.

## DISCUSSION

### I. *Standard of Review*

■ Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of

---

[8] Plaintiff's memorandum of points and authorities in opposition to summary judgment stated: "Plaintiff is not arguing that moving party was negligent for being absent at the scene of the school sponsored activity or that Reid should have been there looking over the students [*sic*] shoulders, guiding each and every movement and making each and every decision .... Plaintiff is contending, however, that the negligence occurred in the classroom and in the planning and development of the school sponsored activity. No one, not even moving party, will argue that students are not under the immediate and direct supervision of a district employee while in the class room [*sic*], where this assignment was given out and explained." (Italics omitted.)

law. (Code Civ. Proc., § 437c, subd. (c).) "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see also, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) ■ Once the moving party defendant meets its burden, the burden shifts to the plaintiff to show a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

"If a party moving for summary judgment … would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment. In such a case … the 'court should grant' the motion 'and avoid a … trial' rendered 'useless' by nonsuit or directed verdict or similar device. [Citations.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th 826, 855.)

"Because plaintiff appeals from an order granting defendants summary judgment, we must independently examine the record to determine whether triable issues of material fact exist. (Code Civ. Proc., § 437c, subd. (c); [citations].)" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor. [Citation.]" (*Id.* at p. 768.)

■ Summary judgment will be upheld when, viewing the evidence in a light most favorable to the opponent, the evidentiary submissions conclusively negate a necessary element of plaintiff's cause of action, or show that under no hypothesis is there a material issue of fact requiring the process of a trial. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

## II. *Appellate Rules*

Plaintiff violates the California Rules of Court, rule 14, which requires that each appellate brief must "support any reference to a matter in the record by a citation to the record." Here, plaintiff provides citations to her "separate statement of disputed facts," without citing where in the record we can find the evidence supporting the facts asserted in the separate statement of disputed facts. The separate statement is not itself evidence of anything. It is mere assertion. The evidence of the asserted facts appears elsewhere—in affidavits, depositions, etc. Plaintiff's brief should have cited to those pages in

addition to the separate statement of disputed facts. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [126 Cal.Rptr.2d 178].) In this instance, we shall disregard the failure to comply with the appellate rules, though we note for the benefit of appellate counsel that this court has discretion to disregard contentions unsupported by proper page cites to the record. (*Ibid*; *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112–114 [113 Cal.Rptr.2d 90]; *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796 [286 Cal.Rptr. 57].)

III.  *Evidentiary Rulings*

Plaintiff contends the trial court erred in excluding transcripts of telephone conversations between plaintiff's investigator and witnesses, during which the witnesses verbally declared their statements were true under penalty of perjury, and which plaintiff's investigator authenticated via her own declaration attesting the transcripts were true reproductions of her conversations. The trial court excluded the transcripts because "they are hearsay and without proper foundation." We shall assume for purposes of this appeal that the transcripts were properly authenticated (though defendants dispute the point). We shall conclude the trial court properly excluded the transcripts of the investigator's taped telephone conversations with McGrath and Graves, because they constituted inadmissible hearsay, and the investigator's declarations authenticating the transcripts did not eliminate the hearsay problem. We shall also conclude, however, that even if the transcript of Reid's interview was admissible, because admissions by a party opponent are an exception to the hearsay rule, any error in excluding the transcript was harmless.

Code of Civil Procedure section 437c, subdivision (b), states an opposition to summary judgment, where appropriate, "shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." Subdivision (d) of the same statute provides: "Supporting and opposing affidavits or declarations shall be made ·by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."

Here, plaintiff did not submit in the trial court any affidavit, declaration or deposition of McGrath, Graves, or Reid. Plaintiff claims the transcripts, containing statements under penalty of perjury, were themselves declarations, once authenticated by her investigator's declaration. She cites no authority supporting her position, and we conclude it is without merit.

First, the transcripts could not qualify as declarations sufficient to defeat summary judgment, because they contained no statement that the information

contained therein was based upon personal knowledge. (Code Civ. Proc., § 437c, subd. (d); *Witchell v. De Korne* (1986) 179 Cal.App.3d 965, 975 [225 Cal.Rptr. 176].)

Moreover, the fact that the transcripts showed statements by the interviewees, responding affirmatively to the question whether their statements were true under penalty of perjury, did not convert the statements into admissible affidavits or declarations.

Thus, Code of Civil Procedure section 2015.5 provides: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, *in writing of the person* making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, *in writing of such person* which recites that it is certified or declared by him or her to be true under penalty of perjury, *is subscribed by him or her*, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California." (Italics added.)

■ Code of Civil Procedure section 2015.5 has been applied in summary judgment proceedings. (*Witchell v. De Korne, supra,* 179 Cal.App.3d 965, 975; *Truslow v. Woodruff* (1967) 252 Cal.App.2d 158 [60 Cal.Rptr. 304].)

■ "Subscribe" as used in section 2015.5 means to sign with one's own hand. (*In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214 [87 Cal.Rptr.2d 339].) Here, there was nothing "subscribed by" McGrath, Graves, or Reid. As to each, there was only a transcript reflecting each was asked verbally by plaintiff's investigator, at the end of a telephone conversation, if his or her statements were true and correct under penalty of perjury. Additionally, there is no indication in the declaration of plaintiff's private investigator that she is one of the limited category of persons authorized by law to administer oaths (Code Civ. Proc., § 2093 [judges, court clerks, notaries public, shorthand reporters, etc.]).

Thus, there was no compliance with Code of Civil Procedure section 2015.5, and the transcripts themselves were inadmissible on that ground.

The McGrath and Graves transcripts were inadmissible on another ground: they consisted of inadmissible hearsay. ■ Evidence containing hearsay

is not admissible evidence and will not raise a triable issue defeating summary judgment. (Code Civ. Proc., § 437c, subd. (d); Evid. Code, § 1200; *Hayman v. Block* (1986) 176 Cal.App.3d 629, 639 [222 Cal.Rptr. 293].) The declaration of the investigator does not cure this problem with respect to McGrath or Graves. The investigator attested the transcripts were true and complete reproductions of her conversations. However, the investigator's declaration could not convert inadmissible hearsay into admissible evidence. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) The statements made by McGrath and Graves in conversation with the investigator meet this test and were hearsay.

Plaintiff makes no argument in her opening brief on appeal as to what possible exception to the hearsay rule would apply to the statements of McGrath and Graves.[9] Instead, plaintiff merely argues the transcripts were properly authenticated by the investigator and therefore should have been admitted.

However, authentication alone does not overcome other rules of evidence, such as the hearsay rule. There is a difference between the foundational device of authentication and substantive rules of admissibility of evidence, such as the hearsay rule.

Thus, Evidence Code section 1400 states, "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." Evidence Code section 1421 states, "A writing may be authenticated by evidence that

---

[9] Plaintiff's opening brief says there is nothing in the transcripts "[that] does not fit into one of many exceptions to the Hearsay rule ...." Plaintiff does not identify any exceptions. In her reply brief, plaintiff makes a belated and nonsensical argument about hearsay. We need not consider new points raised in the reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788] [reviewing court may disregard new points first raised by appellant in reply brief].) Moreover, plaintiff's arguments are meritless. She argues Graves's statement, that it was common for students to sit in the backs of trucks during the mapping assignment, was not hearsay because it was the statement of the declarant and went to the issue of whether defendants should have taken measures to ensure safe vehicles. Plaintiff argues McGrath's statement, that Reid was aware McGrath would be driving, was not hearsay because it was the statement of the declarant and went to dispute Reid's testimony that he was unaware of which students would be driving. Plaintiff cites no authority whatsoever. Moreover, the McGrath transcript contained no admissions by Reid. McGrath merely said Reid "knew" things (implying McGrath or someone else told Reid things); McGrath did not say Reid admitted knowing things. Finally, plaintiff's argument that an out-of-court statement "is not hearsay because it is the statement of the declarant" is ludicrous.

the writing refers to or states matters that are unlikely to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the writing."

■ Thus, authentication of a writing is independent of the question of whether the content of the writing is inadmissible as hearsay. (See *Kramer v. Barnes* (1963) 212 Cal.App.2d 440, 446–448 [27 Cal.Rptr. 895].)

Plaintiff cites case law for the proposition that tape recordings, properly authenticated, are admissible as "writings." She argues it naturally follows that transcripts of tape recordings, properly authenticated, are also admissible. However, the cases cited by plaintiff merely dealt with questions of authentication of otherwise admissible evidence. Thus, in *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241 [273 Cal.Rptr. 674] (overruled on other grounds in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768 [117 Cal.Rptr.2d 574, 41 P.3d 575]), the challenged evidence was a transcript of a conversation with the opposing party. (*O'Laskey* at p. 249.) Admissions of a party opponent are an exception to the hearsay rule. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party ...."].) The other case cited by plaintiff, *Darley v. Ward* (1980) 28 Cal.3d 257 [168 Cal.Rptr. 481, 617 P.2d 1113], involved a tape recording of a board hearing in a citizen's mandate petition against the board, seeking to overturn the board's decision. (*Id.* at p. 260.) *Darley* held the trial court was required to accept the tapes or grant a continuance for preparation of a written transcript of the tapes. (*Id.* at p. 263.) Neither case helps plaintiff here.

We conclude the trial court properly excluded the evidence of the telephone conversations between plaintiff's investigator and McGrath and Graves on the ground the evidence was hearsay.

Reid's transcript stands on different ground. Hearsay statements by Reid fall within the hearsay exception for admissions of a party opponent (Evid. Code, § 1220), though plaintiff does not so argue. Reid's admissions, reported by the investigator, would not be barred by the hearsay rule. However, assuming the Reid transcript was properly authenticated (a point disputed by defendants), the transcript of Reid's statements does not help plaintiff's case, because it merely showed Reid did not check McGrath's driving record or insurance status. As we discuss, *post*, Reid had no duty to do so, and his failure to do so does not provide any basis for liability. Any error in excluding Reid's transcript is harmless on this record.

IV. *Summary Judgment Was Proper*

Plaintiff contends the trial court erred in concluding her claim was barred by section 87706. We disagree.

"In order to determine whether a tort claim may be maintained against a public entity, the paradigm for analysis ordinarily requires we proceed by first identifying a duty on the part of the entity, then ascertain a statutory basis for liability, and then finally determine whether any statutory immunities are applicable. [Citation.]" (*Crow v. State of California* (1990) 222 Cal.App.3d 192, 203 [271 Cal.Rptr. 349].)

█ A public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a); *Hoff v. Vacaville Unified School District* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522].) █ Government Code section 815.2, subdivision (a), provides a public entity is liable for injury proximately caused by an act or omission of its employee within the scope of employment if the conduct would have given rise to a cause of action against the employee. (*Hoff, supra*, 19 Cal.4th at p. 932.) █ Under Government Code section 820, subdivision (a), a public employee is liable for injury caused by his act or omission to the same extent as a private person. (*Hoff, supra*, 19 Cal.4th at p. 932.)

█ College districts and employees generally have no liability for *off-campus* injuries to college students, with specified exceptions. (§ 87706; see fn. 1, *ante*.)

Although the Education Code contains a provision for elementary and secondary schools (§ 44808), which is identical to section 87706, we shall see that case law recognizes that the presumed maturity of college students warrants different treatment in terms of duty of supervision.

Here, the injury to plaintiff occurred off campus (though we note defendants argue the absence of duty in this case has very little to do with the fact the accident occurred off campus).

Plaintiff asserts she is relying on section 87706 (see fn. 1, *ante*) as the basis for liability, in that section 87706 provides a college district and its employees may be liable and responsible for the conduct and safety of students off campus, where the district undertakes a "school-sponsored activity" or fails to exercise reasonable care under the circumstances.

Plaintiff cites case law that she views as helpful to her position that the mapping assignment was a "school-sponsored activity." (E.g., *Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 132 [65 Cal.Rptr.2d 280] [school-sponsored activity is one that requires attendance and for which attendance credit may be given].) Though not cited by plaintiff, *Barnhart v. Cabrillo Community College, supra*, 76 Cal.App.4th 818, indicates the test is

not whether participation is voluntary, but whether the off-premises activity is part of the school curriculum. (*Id.* at p. 827.)

We shall assume for purposes of this appeal that the mapping assignment was a "school-sponsored activity" and not a "field trip[] or excursion[]" (see fn. 2, *ante*). ▮▮▮ Nevertheless, section 87706 contains the further qualification that defendants are liable only while the students were or should have, been "under the immediate and direct supervision of an employee of such district or board" during the assignment. (§ 87706; see fn. 1, *ante.*)

It is undisputed the students were not under the immediate and direct supervision of a district employee while they were performing the mapping assignment, and we see nothing suggesting defendants should have been supervising the students while they were engaged in doing the assignment.

Plaintiff does not contend the students were or should have been under the immediate and direct supervision of a district employee during the students' performance of the mapping assignment. Instead, she claims the timing of the "immediate and direct supervision" in section 87706 refers to the time when the negligent conduct by the district employee occurs, and here the negligence occurred in the classroom when Reid gave the assignment (and should have checked driving arrangements and insurance records, etc.) and in the planning and development of the assignment. Plaintiff notes students are under the immediate and direct supervision of a district employee while in the classroom. Plaintiff argues that, when Reid gave the assignment in the classroom, he should have taken reasonable steps to ensure that there were enough safe vehicles for the students, that the vehicles had proper seating, and that all drivers had adequate insurance and good driving records. Plaintiff also claims Reid should have instructed the students on off-road safety, and should have taken steps to procure safer school-owned vehicles if needed. Plaintiff argues Reid's failure to take these steps was a "breach of the standard duty of care as well as that created by ... Section 87706."

However, plaintiff's construction of section 87706 (see fn. 1, *ante*) is defeated by the statutory language itself, which says, "In the event of such a specific undertaking, the district shall be liable or responsible for the conduct or safety of any student *only while* such student is or should be under the immediate and direct supervision of an employee of such district or board." (Italics added.) Thus, under section 87706, defendants would be liable "for the conduct" of student McGrath (whose reckless driving caused the accident) "only while" McGrath was or should have been under the immediate and direct supervision of Reid. Similarly, defendants would be liable for the "safety" of plaintiff "only while" plaintiff was or should have been under the immediate and direct supervision of Reid. Thus, section 87706 does not, as plaintiff claims, impose liability on defendants for negligent supervision in the classroom.

We agree with defendants' argument that plaintiff's position would eviscerate section 87706, because any off-campus activity is invariably preceded by some kind of on-campus instruction. The statute draws a line between activities requiring additional supervision and control over the students when they travel, and the multitude of off-campus school-related activities for which liability cannot be imposed. This case clearly falls in the latter category.

Plaintiff cites case law allowing imposition of liability for off-school-premises injuries resulting from on-school-premises negligence. However, the cited cases turned on the common law rule that schools have a duty to exercise ordinary care in supervising students on school premises and are liable for injuries proximately caused by their breach of that duty. Plaintiff's reliance on these cases is flawed because, despite the fact she was a 20-year-old college student at the time of the accident, her cited cases were predicated on the duty of supervision owed by school employees to *elementary and high school* students, and plaintiff fails to acknowledge the law treats *college* students differently. College students are adults who, unlike children, are able to make their own responsible decisions about their own transportation.

Thus, we said in *Ochoa v. California State University* (1999) 72 Cal.App.4th 1300 [85 Cal.Rptr.2d 768]: "Unlike high school students, whose attendance is compelled [10] and over whom school officials have direct responsibility while the students are at school, adult college students attend school and participate in school activities voluntarily. [Citation.] Furthermore, since college administrators have abandoned in loco parentis supervision of adult students and have recognized the students' rights to control and regulate their own lives, colleges and universities may no longer be charged with a general duty of care to supervise student activities. [Citations.]" (*Id.* at p. 1305 [university owed no duty to protect student from assault by opposing player in intramural soccer game].)

Similarly, in *Crow v. State of California, supra,* 222 Cal.App.3d 192, we affirmed summary judgment in favor of a university in an action by a university student who was assaulted in a dormitory by another student during a "keg party." (*Id.* at p. 197.) We rejected the plaintiff's argument that liability could be predicated on the university's negligent operation and supervision of the dormitories. (*Id.* at p. 207.) The plaintiff was an adult college student voluntarily drinking beer at the dormitory, and no claim was made that the college knew or should have known of any particular risk of harm at this particular dormitory. (*Id.* at p. 208.) Of interest to the case now

---

[10] Persons between the ages of six and 18 are subject to compulsory full-time education. (§ 48200.)

before us, we noted in *Crow* the "distinction between young, immature schoolchildren in grammar and high schools on the one hand and adult students in colleges and universities on the other was highlighted in *Baldwin v. Zoradi* (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809]," which held university trustees and dormitory advisors were not liable to a student who was injured while engaged with other students in a speed contest in their cars after a drinking party in the dormitory. (*Crow, supra,* 222 Cal.App.3d at p. 209.)

*Baldwin* in turn cited a federal case where an 18-year-old was injured while returning from an off–campus sophomore class picnic in a vehicle driven by a person who became intoxicated at the picnic. The class adviser had cosigned a check for the beer. The picnic had been advertised on campus with flyers depicting beer mugs. After a verdict against the college, the appellate court reversed, deciding as a policy matter that the college should not be held obligated (should not have a "duty") to control such a drinking party. (*Baldwin v. Zoradi, supra,* 123 Cal.App.3d 275, 287.) "The [federal] court observed that the authoritarian role of college administrators is gone. Students have demanded rights which have given them a new status and abrogated the role of *in loco parentis* of college administrators. '[¶] Our beginning point is a recognition that the modern American college is not an insurer of the safety of its students. Whatever may have been its responsibility in an earlier era, the authoritarian role of today's college administrations has been notably diluted in recent decades. Trustees, administrators, and faculties have been required to yield to the expanding rights and privileges of their students.' [Citation.]" (*Ibid.*)

In *Crow v. State of California, supra,* 222 Cal.App.3d 192, 209, we quoted from *Baldwin v. Zoradi, supra,* 123 Cal.App.3d 275, 291. " 'The transfer of prerogatives and rights from college administrators to the students is salubrious' ... 'when seen in the context of a proper goal of postsecondary education—the maturation of the students. Only by giving them responsibilities can students grow into responsible adulthood. Although the alleged lack of supervision had a disastrous result to this plaintiff, the overall policy of stimulating student growth is in the public interest.' "

Although the foregoing cases are distinguishable because they involved voluntary recreational activity rather than the assertedly mandatory class activity at issue in this case, the point is that plaintiff's reliance on the duty schools owe to *elementary and high school* students is unavailing, because *college* students are treated differently.

Thus, plaintiff cites *Perna v. Conejo Valley Unified School Dist.* (1983) 143 Cal.App.3d 292 [192 Cal.Rptr. 10] (*Perna*), where a teacher asked a 12-year-old student to stay after school and help grade papers. The student's

14-year-old sister waited for her, and the two children headed home about 3:00 p.m. They were struck by a car while crossing a street where a school crossing guard is posted until 2:45 p.m. *Perna* held the ensuing complaint stated a cause of action against the school district, by alleging the teacher knew or should have known the crossing guard would be gone by the time the students got there. It was a jury question whether the district's alleged failure to exercise due care in supervising students on school premises was a proximate cause of the injuries. (*Id.* at pp. 294–296.)

Thus, *Perna, supra,* 143 Cal.App.3d 292, is distinguishable, because it involved students between the ages of 12 and 14. Even plaintiff does not argue that a college or its employees would be liable in similar circumstances for having kept a college student after class. Plaintiff merely argues *Perna* stands for the proposition that a jury should be allowed to decide whether actions in the classroom amount to negligence under the totality of circumstances. However, the jury question in *Perna* was proximate causation. (*Id.* at p. 296.) Here, plaintiff's case falters on the absence of duty, and she fails to show any triable issue that a duty existed.

Plaintiff also cites *Calandri v. Ione Unified School Dist.* (1963) 219 Cal.App.2d 542 [33 Cal.Rptr. 333] (*Calandri*), where a 15-year-old student injured his hand at his home when he tried to fire a toy cannon he made in "shop" class at school. Following a jury's verdict in favor of the defendants (the teacher and school district), the appellate court reversed, holding the trial court erred in refusing to instruct the jury on "the duty of care owed by an adult to a child." (*Id.* at p. 545.) As concerns us, *Calandri* merely stated, "Moreover, if the teacher knew that these playthings were being made to explode gunpowder, we can find no significance, comforting to respondents, in the fact (earnestly argued by them) that it was understood such explosions would be conducted off school premises. Would [a prior case of a student injured while performing chemistry experiments in school] have been decided differently had the making of gunpowder been assigned as homework? We think not." (*Id.* at pp. 549–550.)

*Calandri, supra,* 219 Cal.App.2d 542, does not help plaintiff, because it concerned "the duty of care owed by an adult to a child" (*id.* at p. 545), and plaintiff fails to show any applicable duty owed to college students.

Plaintiff (under the heading that the assignment was a mandatory school-sponsored activity) also cites *Castro v. Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232 [126 Cal.Rptr. 537], for its statement that "[s]tudents who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property ...." (*Id.* at p. 236.) However, plaintiff omits the rest of the sentence, which concluded with the

words, "within supervisorial limits." (*Ibid.*) *Castro* held a complaint survived demurrer where it alleged a high school student was injured while participating in a summer camp of the school's "Junior ROTC," and alleged the student was under the control and supervision of the school at the time of the accident. (*Id.* at p. 237.) *Castro* is of no help to plaintiff in this case. She does not contend she was under the control and supervision of the school at the time of the accident.

Similarly, plaintiff under a disparate heading cites *Hoyem v. Manhattan Beach City School Dist.* (1978) 22 Cal.3d 508 [150 Cal.Rptr. 1, 585 P.2d 851] (*Hoyem*), where a 10-year-old boy left school grounds during school hours and was subsequently injured by a motorcycle. The Supreme Court held the school district had a duty to supervise students while on school premises during the school day, and the district may be liable for injuries proximately caused by the district's failure to exercise reasonable care. (*Id.* at p. 513.)

*Hoyem* referred to section 44808, which is identical to the statute at issue in this appeal (§ 87706), but section 44808 governs elementary and secondary schools, while the statute at issue in this case (§ 87706) governs colleges. (*Hoyem, supra*, 22 Cal.3d 508, 516–517.) We note *Hoyem* did not discuss the statutory language about liability "only while" the student was or should have been under the direct supervision of the school. *Hoyem* cited the common law duty to supervise schoolchildren and rejected the school district's position that section 44808 provided the district with immunity. (*Hoyem*, at pp. 516–517.) *Hoyem* said the statute was principally concerned with limiting liability for students' commute to and from school (*ibid.*), and the clear legislative intent of the statutory language withdrawing the immunity for off-premises injuries if the district failed to exercise reasonable care, was "when a school district fails to exercise reasonable care the immunity of this section evaporates."[11] (*Id.* at p. 517, fn. 2.)

This statement is perplexing, since the very concept of immunity presupposes a failure to exercise reasonable care. (See *Torsiello v. Oakland Unified School Dist.* (1987) 197 Cal.App.3d 41, 47–49 [242 Cal.Rptr. 752] [discussing the meaning of the "reasonable care" phrase].) However, we need not

---

[11] *Hoyem, supra*, 22 Cal.3d 508, said: "Although the initial portion of the statute provides that 'no school district shall be responsible … for the conduct or safety of any pupil … at any time when such pupil is not on school property,' the section goes on explicitly to withdraw this grant of immunity whenever the school district, inter alia, '*has failed to exercise reasonable care under the circumstances.*'" (*Id.* at p. 517.) *Hoyem* continued in a footnote: "That the 'reasonable care' exception in the statute is not accidental is clear from the legislative history. The original bill, passed by the Assembly, was identical to the current statute but did not include the final phrase about reasonable care. That phrase was added by Senate amendment [citation] and then approved unanimously by the Assembly. [Citation.] The intent of the Legislature is clear: when a school district fails to exercise reasonable care the immunity of this section evaporates." (*Id.* at p. 517, fn. 2.)

delve into the matter, because plaintiff's complaint about what defendants should have done does not allege an actionable failure to exercise due care.

■ We have explained that plaintiff's reliance on cases involving children in elementary and secondary schools is misplaced, because the duty owed to college students such as plaintiff is different from the duty owed to elementary and high school students.

We agree with defendants' position that imposition of a tort duty under the circumstances of this case is unwarranted. In our view, a college must be able to give its students off-campus assignments, without specifying the mode of transportation, and without being saddled with liability for accidents that occur in the process of transportation. A college instructor who gives an assignment requiring a trip to a library, or a tour of a city's unique architectural buildings, should not be required to instruct the students on the need to drive at a safe speed and to wear a seat belt while completing the assignment. Yet, in essence, that is the duty plaintiff seeks to impose in this case.

Plaintiff argues a trip to the library is different from sending students out into rough terrain in the backs of pickup trucks. However, defendants did not send the students anywhere in the backs of pickup trucks. Defendants did not tell the students to ride in the backs of pickup trucks and did not direct their transportation arrangements at all, other than Reid telling students to drive, walk, or ride horses.

Plaintiff argues she has shown that defendants sent junior college students out into the "wilderness" without proper instruction, did nothing to ascertain that students would be traveling in a safe manner or in proper vehicles, did nothing to check the driving records or insurance information on those who were delegated as drivers, and offered no tutelage regarding safety with respect to the operation of off-road vehicles. However, even accepting for purposes of this appeal plaintiff's characterization of the area as "wilderness," defendants had no duty to do any of those things.

■ Applying the familiar factors of *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561], we find no basis for imposing liability on defendants. Even assuming for the sake of argument that the harm to plaintiff was foreseeable, the connection between defendants' alleged conduct (negligent failure to ensure safe travel) and plaintiff's harm was not particularly close, nor was defendants' conduct morally blameworthy, given that (1) the students were college students training to assume leadership roles in pack trips, and (2) plaintiff admitted she did not need to be told by Reid that her actions were dangerous. It is unclear how the policy of

preventing future harm would be fostered by finding liability in this case. The extent of the burden on defendants, created by a requirement that it protect every college student from reckless driving by fellow students during performance of what amounts to homework assignments, would be extraordinary, as would be the likely increase in the college district's insurance premiums. (*Ochoa v. California State University, supra*, 72 Cal.App.4th 1300, 1306.)

Accordingly, we conclude defendants are not liable to plaintiff under either aspect of section 87706 relied upon by plaintiff, i.e., undertaking a school-sponsored activity, or failing to exercise reasonable care under the circumstances.

We conclude summary judgment was proper under section 87706. We need not address defendants' alternative grounds for summary judgment (express and implied assumption of the risk and immunity for discretionary activity).

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Scotland, P. J., and Blease, J., concurred.