Filed 12/3/21  Olivero v. San Francisco Dept. of Public Health CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MELISA OLIVERO,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>SAN FRANCISO DEPARTMENT OF PUBLIC HEALTH,<br><br>　　　Defendant and Respondent. | A160310<br><br>(City & County of San Francisco Super. Ct. No. CGC-18-564303) |

Plaintiff Melisa Olivero appeals from the grant of summary judgment on her complaint against the San Francisco Department of Public Health (Department) alleging constructive wrongful termination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); retaliation in violation of FEHA; retaliation in violation of Labor Code section 1102.5; and failure to prevent harassment, discrimination or retaliation in violation of FEHA.  The Department successfully moved for summary judgment on the grounds that plaintiff failed to present evidence to support a prima facie claim of retaliation and that she could not show that the Department's legitimate, nonretaliatory business reasons for extending plaintiff's probation and later transferring her to another location were a pretext for retaliation.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## I.    Plaintiff's Employment

Plaintiff began working for the Department in May 2016, as a practice manager at Castro–Mission Health Center (CMHC).  As with almost all new employees of the City and County of San Francisco, plaintiff was given a probationary period set to last for approximately one year.  As practice manager, plaintiff was the management team lead for patient and staff experience and for operational quality improvement activities.

---

[1] We take these facts from the record before the trial court when it ruled on the Department's motion for summary judgment.  The statement of facts in plaintiff's opening brief contains numerous inaccurate record citations to the Department's separate statement of undisputed facts filed in support of its motion and to asserted additional undisputed facts in plaintiff's response to defendant's separate statement, without citing where in the record we can find the evidence supporting the facts she asserts.  Plaintiff's response to the defendant's separate statement is not itself evidence of disputed facts but, rather, a "mere assertion" of disputed facts.  (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024–1025, disapproved on other grounds in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 634, fn. 7.)  Plaintiff was required to provide the record citations to the actual evidence (e.g., deposition testimony, documents, declarations).  (*Stockinger*, at pp. 1024–1025; Cal. Rules of Court, rule 8.204(a)(1)(C).)  Plaintiff's error is compounded because many of her citations to the separate statements are to pages that do not even discuss the facts asserted in the statement of facts section of her opening brief.  (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 ["In reviewing a ruling on a motion for summary judgment, 'de novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority' "].)  For these reasons, we base our understanding of the facts on the record citations in defendant's brief.  (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 556, fn. 1.)

In January 2017, the center director for CMHC, Dr. Chris Nguyen, resigned, and plaintiff became the interim center director for CMHC. Dr. Anne Rosenthal began as part-time medical director for CMHC as she transitioned from a different clinic to work at CMHC full-time. In May 2017, plaintiff returned to her prior position of practice manager and Dr. Rosenthal became CMHC's full-time center director and plaintiff's supervisor.

During plaintiff's first year at CMHC, interpersonal and performance issues arose, which included complaints of unprofessional conduct, favoritism, inappropriate interactions, and disrespectful behavior. These concerns were observed directly by the plaintiff's supervisor, Dr. Rosenthal, and complaints were made by "multiple staff members," including an employee named Gladis S., who was an administrative operations supervisor at CMHC. When plaintiff was practice manager, she and Gladis S. were colleagues, and when plaintiff was interim center director, plaintiff supervised Gladis S.

Plaintiff also had complaints regarding Gladis S., which included both job performance issues and that Gladis S. lied on multiple occasions. Plaintiff complained of the following: In October 2016, plaintiff was called into a meeting with Dr. Nguyen and Gladis S. because Gladis S. reported to Dr. Nguyen that plaintiff had "said something violent to her . . . ." Plaintiff denied that she had done so, and at the meeting Gladis S. said, " '[N]ever mind. Forget it.' "[2] In November 2016, Gladis S. falsely told others that

_____

[2] Plaintiff testified at her deposition that Dr. Nguyen did not tell her exactly what Gladis S. accused plaintiff of saying. Dr. Nguyen testified he received a complaint from Gladis S. that plaintiff said she "was going to cut [Gladis S.]." Dr. Nguyen investigated by speaking with Gladis S. and plaintiff, and he concluded that plaintiff had made a generalized statement about "cutting with words" which Gladis S. took personally.

plaintiff complained that a nurse manager had sexually harassed plaintiff. Gladis S. told others that plaintiff did not know how to do her job. When plaintiff was interim director, she learned that Gladis S. had over 200 unanswered task assignments and over 400 unanswered e-mails. During this same period, Gladis S. was uncooperative in providing plaintiff the information required to track Gladis S.'s leave under the Family and Medical Leave Act. In June 2017, an unauthorized person was in the clinic and Gladis S. did not file an internal report, call security, or help the city employee who was attempting to investigate the issue. Gladis S. falsely told others that the intruder was a clinic patient. In July 2017, Gladis S. complained that items had been stolen from her office, but she did not file an internal report regarding the issue. Another time, Gladis S. alleged that her car was broken into outside of the clinic, but she did not file an internal report or report it to the Department's director of safety. Gladis S. also confronted plaintiff about how plaintiff chose who would be part of a photoshoot for CMHC. Plaintiff learned of allegations that Gladis S. was surreptitiously recording conversations with other CMHC employees.

Plaintiff complained about her interactions with Gladis S. verbally and in e-mails to Dr. Rosenthal and/or Kathryn Horner, who was the director of operations. In April or May 2017, plaintiff filed an anonymous complaint with the Department's Office of Compliance and Privacy Affairs regarding the allegations that Gladis S. was recording conversations with coworkers.

Dr. Rosenthal, plaintiff's supervisor, was not aware during the time that she worked with plaintiff that plaintiff had filed the anonymous complaint.

## II.     Extension of Probation

In May 2017, the Department extended plaintiff's probation until September 28, 2017, due to complaints of unprofessional conduct, favoritism, inappropriate interactions and disrespectful behavior observed by several employees at CMHC, including her supervisor, Dr. Rosenthal.  Further, in August 2017, Gladis S. was temporarily assigned to a different location.

## III.    Investigation and Transfer

On September 13, 2017, the director of security for the Department informed plaintiff that Gladis S. reported that plaintiff had threatened to stab Gladis S.  Upon hearing this allegation, plaintiff became very upset and fearful for her safety.  She immediately sent an e-mail to Dr. Rosenthal, the Department's director of security, and the Department's director of human resources stating that Gladis S.'s accusations made plaintiff fear for her own safety.  The e-mail summarized some of the prior issues plaintiff had with Gladis S.'s performance and false accusations, and stated: "I have mistakenly allowed for her harassment and lies that she has made about me to roll off my back, let my supervisor know the facts, provide emails, and shared with the Union the situation but never formally report her.  In fact agreed to a extension of probation mainly based on her lies even when I knew this was a manipulative move.  However, I am officially reporting to HR,  my direct Supervisor, my Union Representative and [director of security], in this email, that I am being harassed by this employee, I am deeply and seriously afraid for my own safety because she is fixated on ruining my reputation; to say the least." (*Sic.*)

Dr. Hammer, the director of primary care, responded to plaintiff's e-mail several hours later, thanking her for bringing the matter to her attention and stating that Roxana Castellón, the interim director of

operations for primary care, would be the lead on addressing plaintiff's concerns and would work with the human resources division. Plaintiff left work later that day and then took a leave of absence on the recommendation of her doctor, which initially was through October 10, 2017, and then was extended through November 8, 2017.

An investigation was conducted by Ging Louie, senior labor relations analyst, and Roxana Castellón into Gladis S.'s allegation and plaintiff's allegations that Gladis S. mistreated and harassed plaintiff. The investigation concluded neither party's claims against the other were substantiated but recommended that plaintiff and Gladis S. be assigned to separate facilities. On October 10, 2017, Roxana Castellón notified plaintiff that she would be reassigned to the Silver Avenue Family Health Center effective October 24, 2017, and that the reassignment would have no impact on plaintiff's classification, compensation or benefits. Plaintiff never reported to the Silver Avenue clinic. She resigned on November 7, 2017.

On February 13, 2018, plaintiff sued the Department, alleging claims for constructive wrongful termination and retaliation, among other causes of action.

## IV.  Department's Motion for Summary Judgment

The Department moved for summary judgment on plaintiff's remaining causes of action in her first amended complaint,[3] which were: (1) constructive wrongful termination in violation of FEHA; (2) retaliation in violation of FEHA; (3)retaliation in violation of Labor Code section 1102.5; and (4) failure to prevent harassment, discrimination or retaliation in violation of FEHA.

---

[3] On August 29, 2019, the court dismissed without leave to amend plaintiff's causes of action for constructive wrongful termination in violation of public policy, negligent hiring and retention, and intentional infliction of emotional distress. Plaintiff's appeal does not challenge this ruling.

6

The Department argued that plaintiff's claims fail because she did not engage in protected activity prior to her resignation; she was never subjected to an adverse employment action; and there was a legitimate, nonretaliatory business reason for the Department's actions.

The trial court granted summary judgment. It reasoned: "Even if plaintiff could show that she was subjected to an adverse employment action that materially affected the terms and conditions of her employment and a causal link existed between the protected activity and the employer's action, Plaintiff cannot establish any of her causes of action because the defendant had a legitimate reason to extend plaintiff's probation and transfer her. Plaintiff fails to present substantial responsive evidence giving rise to a triable issue of fact that those purportedly adverse employment actions were the product of retaliatory animus. [Citations.]"

The trial court's order further found that the Department demonstrated that it extended plaintiff's probation because of communication and performance issues as testified to by Dr. Rosenthal. In response to this evidence, the plaintiff asserted she was never previously told of performance issues. The trial court found that the Department's legitimate business reason for transferring plaintiff was that the Department reasonably believed it was best to separate plaintiff from Gladis S. Plaintiff's criticisms of the Department's investigation and report did not prove retaliation. "To the contrary, the transfers of both [Gladis S.] and plaintiff to different facilities squarely addressed the 'legitimate safety concerns' of which plaintiff complains." The court further concluded that the plaintiff did not show that she was forced to work in an abusive working environment because it was undisputed that she never reported to the new facility to which she had been transferred. Instead, she resigned.

7

# DISCUSSION

## I. Summary Judgment Review

Summary judgment is proper where there is no triable issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the trial court's decision de novo and consider all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

## II. Burden-shifting in Employment Discrimination and Retaliation Cases

California has adopted the federal burden-shifting test for assessing employment discrimination claims. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354.) "[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1042.)

"In responding to the employer's showing of a legitimate reason for the complained-of action, . . . ' " . . . the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' [citation], and

hence infer 'that the employer did not act for the [ . . . asserted] non-discriminatory reasons.' [Citations.]" ' " ' " (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 388–389.) "The plaintiff must do more than raise the inference that the employer's asserted reason is false. '[A] reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.' [Citation.] If the plaintiff produces *no* evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment. [Citation.]" (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.)

"Although an employee's evidence submitted in opposition to an employer's motion for summary judgment is construed liberally, it 'remains subject to careful scrutiny.' [Citation.] The employee's 'subjective beliefs in an employment discrimination case do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations.' [Citation.] The employee's evidence must relate to the motivation of the decision makers and prove, by nonspeculative evidence, 'an actual causal link between prohibited motivation and termination.' " (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.)

III. **Trial Court Did Not Err in Granting Summary Judgment**

A. ***Plaintiff cannot maintain her retaliation claim under FEHA because she failed to rebut the Department's legitimate, nonretaliatory reasons for its actions.***

Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Gov.

9

Code, § 12940, subd. (h).)  As did the trial court, we assume without deciding that plaintiff's evidence established a prima facie case of retaliation. Plaintiff's primary argument on appeal is that the trial court failed to weigh her rebuttal evidence, which she asserts raised a triable issue of material fact regarding intentional retaliation.[4]  We find no error because plaintiff's rebuttal evidence was insufficient to raise a triable issue of material fact regarding intentional retaliation.

The Department introduced testimony of plaintiff's supervisor that plaintiff's probation was extended based on the supervisor's own observations of plaintiff's performance and communications, and complaints from several coworkers.  Although the coworker complaints included complaints from Gladis S., Dr. Rosenthal testified, "There were a series of concerns . . . that were raised by staff members, people that she supervised and some of my own observations," and Dr. Rosenthal wrote a memorandum documenting that "multiple concerns expressed by multiple staff members corroborate a problem with interpersonal communication; the complaints are not coming from a single source."  The purpose of the four-month probation extension was to allow time for Dr. Rosenthal to provide plaintiff with "1-on-1 weekly supervision . . . including coaching and guidance" "to ensure that she is successful in her duties specifically as it relates [*sic*] to her leadership/supervisory role . . . ."  This evidence establishes the Department

---

[4] Plaintiff's argument appears to concede that the Department met its burden to offer a legitimate, nonretaliatory reason for the allegedly adverse employment actions and, therefore, the burden shifted back to the plaintiff to prove intentional discrimination.  We focus our analysis on whether the plaintiff offered evidence sufficient to rebut the Department's showing of legitimate, nonretaliatory business reasons for its actions.

10

had a legitimate business reason to extend plaintiff's probation for four months.

Plaintiff's opening brief argues under the heading "Extension of Appellant's Probation" that the record before the trial court includes "detailed responsive evidence which viewed in total demonstrate [*sic*], at a minimum, a triable issue of fact," and it lists a number of alleged facts, many of which relate to events that occurred after the Department's May 2017 decision to extend plaintiff's probation. Plaintiff does not explain how events occurring after May 2017 are relevant to prove that the extension of her probation was retaliatory.[5] Moreover, in violation of California Rules of Court, rule 8.204(a)(1)(C), plaintiff cites only to her response to the Department's separate statement of undisputed facts, in which she asserts additional facts, but not to where in the record we can find the actual evidence she contends proves her asserted facts (e.g., deposition testimony, documents, declarations). (*Stockinger v. Feather River Community College, supra*, 111 Cal.App.4th at pp. 1024–1025.)

But even if we assume the truth of the three facts plaintiff asserts occurred before the May 2017 decision to extend her probation, they are insufficient to rebut the Department's legitimate, nondiscriminatory reason for its decision. The three facts asserted are: (1) "[i]n November 2016, [plaintiff] became aware that [Gladis S.] was making allegations about her, including that [plaintiff] would 'cut' her"; (2) "[d]uring the next few months, [plaintiff] was managing [Gladis S.] and became aware of problems that

_____

[5] Some of the post-May 2017 facts plaintiff asserts are that "issues with [Gladis S.] advanced and [Gladis S.] was transferred to a different location in or around July 2017" and that in September 2017 plaintiff was informed she was "doing great" and would be removed from probation at the end of the month.

11

required being reported to Human Resources including HIPAA violations and illegal recordings"; and (3) prior to May 2017, plaintiff had not been told of any issues with her performance. Even taken as true, these alleged facts do nothing to rebut the evidence that plaintiff's supervisor observed issues with plaintiff's communication and that multiple coworkers raised issues regarding plaintiff's interpersonal communications.[6]

The Department also provided evidence that the decision to transfer plaintiff and Gladis S. was based on a legitimate, nonretaliatory determination that they should no longer work together. Plaintiff asserts there is evidence which raises factual issues and points to four alleged facts: (1) Gladis S. had already been transferred to a different location; (2) the Silver Avenue Family Heath Center population spoke predominantly Chinese and Mandarin; (3) plaintiff spoke English and Spanish; and (4) the Silver Avenue Family Health Center "did not have the same opportunity to work as a supervisor while her prior location was understaffed."[7] The Department provided evidence that Gladis S.'s assignment to a different location was initially temporary and was not made permanent until the investigation concluded both Gladis S. and plaintiff would be "most successful in their

_____

[6] Further, the facts asserted by plaintiff in her opening brief state only when plaintiff "became aware" of Gladis S.'s allegations and alleged "problems that required being reported to Human Resources," but they do not state when, or if, plaintiff actually made any complaints about Gladis S. prior to the extension of her probation in May 2017. Such general assertions are insufficient to establish a triable issue of material fact as to retaliation. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

[7] Again, plaintiff provides record citations only to the additional facts she asserted in her response to defendant's separate statement and not to the actual evidence supporting her asserted facts.

respective professional roles if assigned to separate facilities" and therefore they were "redeployed to other locations."

Additionally, both Dr. Rosenthal and Roxana Castellón, who had been a practice manager at Silver Avenue Family Health Center, testified regarding the language need at Silver Avenue Family Health Center. Castellón testified, "There was a need at Silver Avenue . . . with similar language capacity," and Dr. Rosenthal testified that the Silver Avenue location was in a "very racially mixed neighborhood" and served Latino as well as Chinese patients. Plaintiff's unsupported statement to the contrary is not sufficient to raise a triable issue of material fact regarding retaliatory animus. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 ["Circumstantial evidence of ' "pretense" must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate' on an improper basis"].)

As to plaintiff's last asserted fact, that the Silver Avenue location did not have the same opportunity to work as a supervisor, we find no evidence of this in the record. Even the separate statement response to which plaintiff improperly cites does not state this asserted fact. Moreover, the Department's letter to plaintiff notifying her of the reassignment states, "The assignment will not impact your classification, compensation, benefits and days off." We agree with the trial court that the evidence established that "the transfers of both [Gladis S.] and plaintiff to different facilities squarely addressed the 'legitimate safety concerns' of which plaintiff complain[ed]."

Plaintiff also asserts that there are issues of material fact relating to the investigation conducted by Louie and whether plaintiff was forced to work in an abusive environment. She argues that Louie failed to speak with witnesses supporting her position even though she provided names to him.

13

Again, she only provides record citations to her response to defendant's separate statement of undisputed facts and not to Louie's actual deposition testimony.[8] Moreover, she does not address how any of her complaints regarding the investigation or the allegedly abusive work environment raise a triable issue of material fact regarding whether the Department's actions were a pretext for retaliation and were motivated by retaliatory animus. For these reasons, we disregard plaintiff's arguments regarding the investigation and the allegedly abusive work environment. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)

Plaintiff further complains that the trial court erroneously relied upon *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377 (*McRae*). Her principal complaint is that *McRae* was an appeal from a jury verdict and not from a summary judgment. We disagree that *McRae*'s different procedural posture is a meaningful distinction such that the trial court erred in relying upon its reasoning.[9]

---

[8] Nor does she provide proper record citations to evidence supporting her claim that she was forced to work in an abusive environment.

[9] *McRae* found a jury's verdict of retaliation was not supported by substantial evidence. (*McRae, supra*, 142 Cal.App.4th at p. 390.) In doing so, the court " 'view[ed] the whole record in a light most favorable to the judgment, resolving all evidentiary conflicts and drawing all reasonable inferences in favor of the decision' " (*id.* at p. 389), and found that McRae did not sustain her burden of demonstrating that the defendant's decision to transfer her was the result of retaliation. (*Id.* at p. 397.) Similarly, in this case, when the trial court ruled on the defendant's motion for summary judgment, it considered whether the plaintiff met her burden to produce substantial responsive evidence giving rise to a triable issue of material fact that the purportedly adverse employment actions were the product of retaliatory animus. (*Hicks v. KNTV Television Inc., supra*, 160 Cal.App.4th at p. 1003.)

In *McRae, supra*, 142 Cal.App.4th at page 397, the defendant presented evidence that it transferred the plaintiff to another location because her relationship with certain coworkers had deteriorated to the point that she sought a restraining order against them. The court found, "Under those circumstances, the decision to transfer Dr. McRae into a new work environment had every appearance of being a reasonable management decision," and McRae's argument that the defendant should have taken some other action to alleviate the problems at her original work location did not meet her burden to produce evidence that the defendant's reason for the transfer was pretextual and was based on retaliation. (*Ibid.*) We find that the trial court properly relied upon *McRae*'s analysis when ruling on the factually similar issue raised in the present case.[10]

---

[10] Plaintiff complains that the trial court's order does not address the case law she cited, which she claims distinguishes *McRae*. Neither of the cases she cites (*Simers v. Los Angeles Times Communications LLC* (2018) 18 Cal.App.5th 1248; *Brown v. City of Sacramento* (2019) 37 Cal.App.5th 587) involves the issue of whether the plaintiff presented sufficient evidence to raise a triable issue of material fact regarding retaliatory animus after the defendant presented a legitimate reason for its actions. The published portion of *Brown* addresses whether plaintiff's administrative complaint was timely filed. (*Brown, supra*, at pp. 598–600.) In *Simers*, "defendant's sole claim [was] that plaintiff 'did not experience an adverse employment action,' and so his discrimination claims 'fail as a matter of law.' " (*Simers, supra*, at p. 1279.) Plaintiff asserts that these cases support her position that she was subject to adverse employment actions. But, the trial court's order assumed this was true and found that the Department had legitimate business reasons for its actions. The focus of the trial court's order was on whether the plaintiff's rebuttal evidence was sufficient to raise a triable issue of material fact regarding retaliatory animus. *McRae* considers this issue (*McRae, supra*, 142 Cal.App.4th at p. 397), and the cases plaintiff cites do not.

**B.** *Retaliation Claim Under Labor Code Section 1102.5*

Plaintiff alleges the trial court erred by failing to address her retaliation claim under Labor Code section 1102.5, subdivision (b).[11] While it is true that the order does not specifically reference plaintiff's claim under section 1102.5, neither does it explicitly name any of plaintiff's other claims. Rather, the trial court found that "Plaintiff cannot establish any of her causes of action" because the Department had a legitimate business reason for its actions and plaintiff failed to meet her burden of producing responsive evidence of retaliatory animus.

We are not persuaded that the trial court erred in granting summary judgment on plaintiff's Labor Code section 1102.5 claim. Plaintiff argues "the record is replete with Appellant's complaints about various issues which range from her own safety to HIPAA violations to false claims," but she provides no record citations to support her position. Nor does she adequately develop her argument explaining which of her complaints fall under section 1102.5's protection and when those complaints were made. Thus, we may disregard this argument. (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at p. 287.)

However, we find that given the evidence of the Department's legitimate business reasons for its actions, the trial court did not err in finding that plaintiff's section 1102.5 claim likewise fails. (See *Edgerly v.*

[11] Labor Code section 1102.5, subdivision (b) prohibits an employer from retaliating "against an employee for disclosing information . . . to a government or law enforcement agency, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . ." Subdivision (e) provides, "A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to [this statute]."

16

*City of Oakland* (2012) 211 Cal.App.4th 1191, 1199 [to prove a cause of action under Lab. Code, § 1102.5, plaintiff must establish a prima facie case of retaliation, and if defendant proves there was a legitimate, nonretaliatory reason for its acts, the burden shifts to plaintiff to demonstrate pretext].)

## C.     *Failure to Prevent Retaliation Under FEHA*

Plaintiff argues that the trial court's order fails to address her cause of action for failure to prevent retaliation.[12]  Having correctly found plaintiff had no actionable claim for retaliation, the trial court did not err in finding that the Department was also entitled to summary judgment on plaintiff's cause of action for failure to prevent retaliation.  (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021 ["An actionable claim under section 12940, subdivision (k) is dependent upon a claim of actual discrimination"].)[13]

---

[12] FEHA states it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  (Gov. Code, § 12940, subd. (k).)

[13] The Department argues plaintiff failed to exhaust her administrative remedies on her claim for failure to prevent retaliation because her January 11, 2018 administrative complaint filed with the Department of Fair Employment and Housing alleges only harassment, disability discrimination and retaliation.  The Department relies on *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1617, which found the trial court lacked jurisdiction over plaintiff's retaliation claim because the plaintiff failed to exhaust his administrative remedies as to that claim.  Plaintiff argues in her reply brief that because her claim for failure to prevent retaliation relates to her retaliation claim, it should be considered exhausted as well.  She relies upon *Brown v. City of Sacramento, supra*, 37 Cal.App.5th at page 600, but the portion of *Brown* regarding exhaustion of administrative remedies was not certified for publication.  Because we find no error in the grant of summary judgment on plaintiff's derivative claim for failure to prevent retaliation, it is not necessary for us to decide whether plaintiff exhausted her administrative remedies as to this claim.

**D.    *Constructive Discharge***

Plaintiff contends the trial court failed to address her constructive discharge claim, and she argues generally, without citation to the record, that "the record before the trial court catalogued the issues presented . . . from those ranging from HIPAA violations, false claims to serious security concerns." She further states adverse actions were taken against her, including extending her probation and transferring her. She concludes this claim should have been decided by a jury. Plaintiff's conclusory assertions without citations to the record or reasoned legal argument are insufficient to demonstrate error. (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286–287.)

## DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Burns, J.

A160310/*Olivero v. S.F. Dept. Public Health*