Filed 4/27/23  Noroozi v. City of Anaheim CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAEID NOROOZI, | |
| Plaintiff and Appellant, | G060543 |
| v. | (Super. Ct. No. 30-2016-00878763) |
| CITY OF ANAHEIM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Richard Y. Lee, Judge.  Affirmed.

Borton Petrini, LLP, Edward J. Morales and Brian Sanchez for Plaintiff and Appellant.

Robert Fabela, City Attorney and Robert J. Tyson, Deputy City Attorney for Defendant and Respondent.

## INTRODUCTION

Saeid Noroozi appeals from a summary judgment in favor of the City of Anaheim (City) on his complaint alleging nine violations of the Fair Employment and Housing Act (FEHA). Noroozi alleged City had harassed him and discriminated and retaliated against him because of his age and his disability and had failed to accommodate his disability, ultimately firing him.

The trial court examined each of Noroozi's FEHA causes of action and determined he had failed to present admissible evidence of a triable issue of material fact as to most of them. In addition, because he had filed his complaint with the Department of Fair Employment and Housing (DFEH) so late – nearly a year after being fired – many of the allegedly discriminatory and harassing actions of which he complained fell outside the statutory time period.

We affirm the judgment. Noroozi did not comply with the evidentiary requirements of the summary judgment statute, and the continuing violation doctrine, on which he heavily relied and still relies, does not rescue him. He had to give the trial court admissible evidence of at least one FEHA violation that occurred during the few days between the expiration of the limitations period and his termination. He failed to do so. In addition, he has failed to provide argument and authority to dispute the alternative grounds on which the trial court's ruling rested.

## FACTS

City's supporting evidence consisted of declarations from three City employees involved in Noroozi's supervision over the years and from its counsel and 16 documentary exhibits. From this evidence, the following facts emerged:

Noroozi began working for City in 1994 as a temporary employee. He was then hired in October 1996 as an associate engineer in the Public Works Department. Eventually he became an associate power engineer, a position he held up to his termination.

In November 2007, Noroozi was working on updates to a design manual and a screening guidelines document, both of which he had previously worked on and both of which were within his job description. The screening guidelines document was to be completed by July 2008; the design manual by December 2008. By October 2010, these updates had not been completed. Noroozi was suspended for three days in December 2010 both for failing to complete his tasks and for insubordination.[1]

City issued another notice of intent to suspend for 30 days in February 2011, but before the suspension could be imposed, Noroozi went on disability leave. He was on leave between February 2011 and February 2012.

City issued a suspension in March 2012, upon Noroozi's return to work, but held the suspension in abeyance because of his long leave. He was given 90 days to complete the design manual and the screening guidelines under a new supervisor.

Despite Noroozi's assurances that he would complete his work on time, he was suspended for 30 days in August 2012 for failing to complete the tasks within the 90-day extension period even though he had no other assignments. During that time, supervisors met with him four times to facilitate his progress, to no avail. Eventually the update project was reassigned to other employees, who had to complete it in addition to other duties. The project was finished within months of reassignment.

Noroozi then left on medical leave between February 2013 and February 2014. When he returned to work, he sent his supervisor an email requesting "accommodation if possible" for the fact that his medical condition made him take "longer to complete the projects." He was given a new assignment to provide customer support, usually involving new construction or electrical upgrades. After two test assignments, to allow him to get used to his new duties, his work was tracked for time. His supervisor estimated the amount of time an associate power engineer would need to

---

[1] Noroozi had submitted proposals to hire outside engineers to complete the projects, after his supervisor told him to complete the work himself.

3

complete the task and then added 25 percent to 50 percent to that amount to accommodate Noroozi's medical condition.

Noroozi's supervisor estimated that the work orders assigned to him during that period should have taken 218.3 hours, including the extra accommodation time. Noroozi spent 667.5 hours on the assignments, with some still incomplete. In addition, the supervisor noted customer complaints for poor service and frequent instances of failure to provide the customer with needed information.

City issued a notice of intent to dismiss on August 14, 2014. The notice gave a detailed explanation of Noroozi's professional shortcomings. It also stated that Noroozi had a right to respond orally or in writing and set a deadline for response of August 28. It does not appear from the record that Noroozi responded on August 28, but City may have considered a later meeting as his response.

On August 22, 2014, after receiving the notice of intent to dismiss, Noroozi submitted a voluntary request for accommodation form, in which he asked for "additional time, clear structured procedures to follow [and] reduced level of stress at work." An interactive meeting was held in early September among several City employees and Noroozi to discuss his request for accommodation.[2] Noroozi explained that his medical condition "distracted" him, causing "brain freezes," and he needed more time to complete his tasks. A follow-up phone call, memorialized in a letter, clarified that the brain freezes "occur on average of five (5) times a day" and fewer than 10 times a day. These distractions, or brain freezes, lasted only a few minutes. Noroozi was "clear that this is the entirety of [his] disabling condition for which [he] requested an accommodation." By letter of September 30, 3014, City refused to accommodate him further, stating he had already been given additional time to complete his work.

---

[2] City may have considered this meeting to be a response to the notice of intent to dismiss.

Noroozi was terminated as of October 9, 2014.  At that time, he was on administrative leave.

In unverified responses to interrogatories (form and special), Noroozi contended that the adverse employment actions taken against him consisted of gradual demotion and termination, hostile work environment, lack of accommodation, and failure to provide leave.  He stated that important assignments were taken from him, and new assignments were below his level or outside the scope of his position.  He was prevented from attending training and then reprimanded for his lack of training.  He was given random assignments and frequent changes in his scope of work.  The complaints about his work were untrue.  He was wrongly accused of being insubordinate because of a disagreement with his supervisor, and he could not proceed on his assignment without resolution of the disagreement.  His two requests for accommodation for his disability, in March and August of 2014, were denied.

Noroozi's evidence in opposition to City's motion consisted of his and his counsel's declaration and 12 exhibits.  In his declaration, Noroozi stated that he was diagnosed with depression in 2010.  He repeated his discovery statements that he had a disagreement with his supervisor, that the scope of work kept changing, and that he was disciplined without cause.

In response to an application for medical leave made in March 2011, City placed Noroozi on medical leave in September 2011.  Noroozi was on medical leave between February 2011 and February 2012.  After being suspended for 30 days in August 2012, Noroozi went on medical leave again between February 2013 to February 2014.  Upon returning from medical leave in February 2014, Noroozi asked his supervisor for accommodation in the form of more time to complete projects.  But, as stated above, the supervisor had already "padded" the time estimates for Noroozi's assignments by 25 percent to 50 percent.

5

City issued a notice of intent to dismiss on August 14, 2014, and Noroozi made another request for accommodation on August 22. The statement from his physician that accompanied this request stated that Noroozi could perform his "usual and customary occupation" provided that he had more time. City denied the request for accommodation on September 30, 2014.

Noroozi filed a complaint with the DFEH on October 5, 2015, nearly a year after being fired. He alleged that City had engaged in discrimination, harassment, and retaliation, had demoted him, had asked impermissible non-job-related questions, had refused to engage in the interactive process, had denied his health benefits while on disability leave, had denied employment, had denied equal pay, had denied or forced a transfer, had denied equal accommodation, had denied promotion, had denied reinstatement, and caused severe emotional distress. He attributed this conduct to his age, ancestry, association with a member of a protected class, disability, engagement in protected activity, medical condition (including cancer), national origin (including language use restrictions), and religion. He received a right-to-sue letter from the department the same day.

Noroozi filed his complaint in Orange County Superior Court on October 3, 2016. He alleged nine Government Code causes of action, a Labor Code whistleblower cause of action, and a cause of action for intentional infliction of emotional distress. The Government Code causes of action were age and disability harassment, discrimination, and retaliation; failure to engage in the interactive process; failure to accommodate; and violation of the California Family Rights Act (CFRA).

City moved for summary judgment on August 10, 2020. In addition to his and his counsel's declarations and the 12 exhibits discussed above, Noroozi filed an opposition separate statement responding to City's separate statement and 140 additional facts.

The trial court granted City's motion in an eight-page minute order. It found that the causes of action for harassment, failure to engage in the interactive process, and failure to accommodate were time-barred. The court refused to apply the continuing violation doctrine because Noroozi had failed to present evidence of a FEHA violation of these kinds during the year before he filed his claim, and there could be no reliance on that doctrine without at least one violation *within* the statute of limitations.

In addition, it granted summary judgment on the causes of action for discrimination because Noroozi had presented no evidence of pretext: (1) on the causes of action for retaliation because Noroozi had presented no evidence of protected activity; (2) on the CFRA cause of action because Noroozi had presented no evidence that he had ever asked for CFRA leave; (3) on the Labor Code whistleblower cause of action because Noroozi had reported only public events; and (4) on the emotional distress cause of action because any non-FEHA-related claim for emotional distress had to be submitted to the workers' compensation system.

Judgment was entered on May 21, 2021.

## DISCUSSION

Before discussing the issues raised in this appeal, we deal with the deficiencies of Noroozi's briefing in this court as they bear on the evidence offered to show a triable issue of material fact on appeal. California Rules of Court, rules 8.204(a)(2)(C) and 8.204(a)(1)(C) require the appellant to provide a citation to the record for every statement of fact in the summary of facts and "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." All of the references to the evidence in the record in Noroozi's opening

brief and most of the references in the reply brief are to his or City's separate statements.[3]

A reference to a separate statement, "without citing where in the record we can find the evidence supporting the facts asserted," is not a proper citation to the record. "The separate statement is not itself evidence of anything. It is mere assertion. The evidence of the asserted facts appears elsewhere – in affidavits, depositions, etc. [The] brief should have cited to those pages in addition to the separate statement . . . ." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024-1025, overruled on other grounds in *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607; see also 2 Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 9:36, p. 9-13).) A citation to "Plaintiff's UDF 4" does not even give the page number on which the undisputed fact may be found.

The reference to the page number of an assertion of fact must be given no matter where it appears in the brief. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1310, fn. 3.) The argument section of Noroozi's opening brief is completely devoid of proper citations to the record, despite heavy reliance on factual statements. The meager citations given in that section are to portions of the separate statement.

We have disregarded the facts in Noroozi's briefs unaccompanied by proper citations. (See *Stockinger v. Feather River Community College, supra*, 111 Cal.App.4th at p. 1025.)

In addition, Noroozi twice cites to an unpublished opinion, violating California Rules of Court, rule 8.1115(a).

---

[3] Noroozi "incorporate[d] by reference" his opposition to City's summary judgment motion and his separate statement at the beginning of his opening brief. Nothing in the California Rules of Court permits this wholesale incorporation or excuses an appellant from citing to the page in the record where the reference occurs. Incorporating these lengthy documents by reference also rendered the certificate of compliance required by California Rules of Court, rule 8.208(c)(1) false.

City's briefing is not without fault.  Its citations to the record not only rely heavily – often exclusively – on separate statements, the separate statement to which it most often refers is to its own "Reply" separate statement to Noroozi's opposition separate statement.  The summary judgment statute does not allow the filing of a reply separate statement (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 252; Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2022) ¶ 10:220.6, p. 5-65), so City improperly cites to a document in the record that should not even be there.  We have disregarded facts in City's brief unaccompanied by proper citations.

## I.    Summary Judgment

We review an order granting a motion for summary judgment de novo.  "[W]e must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law."  (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

Code of Civil Procedure section 437c[4] "is a complicated, unforgiving statute with little flexibility and 'myriad requirements.'  [Citation.]"  (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 632.)  It is designed to determine whether scarce judicial and costly individual resources need to be expended on a full-dress trial, in which a trier of fact (court or jury) decides, as best it can, who is telling the truth and what really happened.  (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1375-1376.)

Although a summary judgment motion is not a trial, the evidence submitted to support or oppose the motion must meet trial standards.  It must be admissible evidence.  (§ 437c, subd. (d).)  This means, for example, that hearsay is not allowed unless a statutory exception applies.  (*See DiCola v. White Brothers Performance*

---

[4]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

*Products, Inc.* (2008) 158 Cal.App.4th 666, 680-681; *Maltby v. Shook* (1955) 131 Cal.App.2d 349, 352.) Documents must be properly authenticated. (*Callahan v. Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 606.) Testimony – declarations for summary judgment – must be based on personal knowledge. (§ 437c, subd. (d).)

Section 437c spells out in considerable detail what is required to make and oppose a summary judgment. For example, "Supporting and opposing affidavits or declarations shall be made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." (*Id.,* subd. (d).) "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. . . . *Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence.*" (*Id.*, subd. (b)(3), italics added.)

Section 437c is also very clear on the subject of each party's burden. "A defendant . . . has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (*Id.*, subd. (p)(2).) "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

In this case, City had the burden of showing that each of Noroozi's causes of action had no merit either because an element of the cause of action could not be established or because a complete defense (e.g., expiration of the limitations period)

10

existed. Once City made that showing, through admissible evidence, the burden shifted to Noroozi to show – again through admissible evidence – the existence of a triable issue of material fact.

The trial court determined that Noroozi had failed to carry this burden of each of the nine FEHA causes of action alleged in the complaint. The court repeatedly found that Noroozi's evidence was insufficient to raise a triable issue of fact. For example, to oppose City's argument that his causes of action were time-barred, Noroozi's separate statement referred the court to his own opposition memorandum of points and authorities. The opposition memorandum then referred to his "additional material facts," namely, his reliance on City's letter of September 30, 2014, which he characterized as giving him "instruction on filing an appeal" and the fact that he *explained* to the DFEH that City's actions were continuous and ongoing. The court observed that the letter did no such thing. It stated that *if* Noroozi successfully appealed his termination (which had already been noticed), the City would discuss accommodation, and his subjective belief regarding the import of the September 2014 letter did not create a triable issue of fact. Noroozi's *explanation* to the DFEH about City's actions was not evidence that they actually occurred.

To oppose City's summary judgment regarding age and disability discrimination, after City submitted evidence of legitimate reasons for his termination, Noroozi had to present admissible evidence that City's reasons were pretextual. (See *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004-1006 (*Scotch*).) He submitted no evidence of pretext. Indeed, the court remarked that he did not dispute the reasons for his termination set forth in the notice of intent to dismiss.

In short, the court perceived pervasive failure on Noroozi's part to submit admissible evidence to create a triable issue of material fact as to each of the FEHA causes of action. Accordingly, the court granted City's motion for summary judgment. We find no error in the court's application of summary judgment law to these facts.

11

## II.　　　　　Continuing Violation Doctrine

Noroozi's appeal rests for the most part on his argument that the court erred in refusing to apply the continuing violation doctrine to overcome the time bar of then Government Code section 12960.[5]  Application of that doctrine, he argues, would allow all of City's prior conduct to be considered as evidence of its FEHA violations.

"That doctrine," as the Supreme Court has stated, "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 801.)  To be "sufficiently connected," the unlawful employer conduct occurring outside the limitations period must (1) be "sufficiently similar in kind" to the conduct within the limitations period, (2) occur "with sufficient frequency" and (3) "have not acquired a degree of 'permanence' so that employees are on notice that further efforts at informal conciliation with the employer to obtain accommodation or end harassment would be futile." (*Ibid.*)  The court explained that this last element was necessary to promote FEHA's preference for informal resolution of employee-employer disputes, rather than forcing employees to choose between filing complaints the first time they perceived their rights to have been violated or trying to resolve the problems and risk losing their rights to bring actions if conciliation failed.  (*Id.* at pp. 820-822.)

The limitations period at the time Noroozi filed his complaint with the DFEH was one year.  He filed on October 5, 2015.  Any FEHA violation that took place between October 5, 2014, and October 5, 2015, would be within the limitations period.

Noroozi thus had to present admissible evidence of a triable issue of fact regarding a FEHA violation that took place on or after October 5, 2014, the last day of the one year preceding the filing of his DFEH complaint in order to come within the

---

[5]　　　In 2015, when Noroozi filed his complaint with the DFEH, the limitations period was one year. The statute has since been amended, effective January 1, 2020, to allow a three-year period. (Gov. Code, § 12960, subd. (e)(3)).

12

continuing violation doctrine. And because he was fired on October 9, 2014, City could not have committed a FEHA violation after that date. That leaves only the time between October 5 and 9, and during this entire five-day period, he was not at work; he was on administrative leave.

For the continuing violation doctrine to apply in this case, the period of time within which a FEHA violation had to occur was the period between October 5 and October 9, 2014. Noroozi had to present admissible evidence of a triable issue of fact as to an incident of discrimination, harassment, or retaliation that happened within that five-day period. That would bring him within a year of October 5, 2015, the day he filed his DFEH complaint. He also had to present evidence of a triable issue of fact regarding failure to engage in the interactive process and failure to accommodate within that same five-day period. If he produced this evidence, then the continuing violation doctrine would allow evidence of incidents that took place before October 5, 2014, to be considered as well.

Noroozi's theory is that being terminated was the harassing, discriminatory, and retaliatory incident required to trigger the continuing violation doctrine. He regarded being fired as the "culmination" of the FEHA violations that had occurred since 2012.[6]

We note at the outset that, as far as this appeal is concerned, Noroozi has abandoned any discrimination, harassment, and retaliation claim based on his age. His sole assertion in his briefing is that City violated his rights with respect to his disability.[7] He provides no argument or authority whatsoever concerning FEHA violations based on age. "'Appellate briefs must provide argument and legal authority for the positions

---

[6] In his reply brief in this court, Noroozi criticizes City for "drudg[ing] up" Noroozi's negative employment history outside of the relevant period: March to October 2014. But in his opposition to City's summary judgment motion, Noroozi stated that the "pertinent complained-of conduct began in or about 2012 and continued until the date of [his] termination [October 2014]."

[7] The word "age" appears once in the discussion section of his opening brief. It appears in the reply brief only once, outside of lists of the causes of action stated in the complaint.

taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.] 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

The continuing violation doctrine requires conduct that is similar in kind, sufficiently frequent, and not permanent, that is, leaving open the possibility of informal resolution. The conduct Noroozi alleged as discriminatory and harassing centered on being pressured to do his job without taking his depression into account.

The trial court granted summary judgment exclusively on limitations grounds on only four of the eleven causes of action in Noroozi's complaint: disability and age harassment, failure to engage in the interactive process, and failure to accommodate. As stated above, Noroozi has presented no argument or authority in this appeal to challenge the ruling on age harassment. Accordingly we address the other three causes of action.

### A.    Failure to Accommodate

To withstand summary judgment on this cause of action, Noroozi had to present evidence of a triable issue of fact as to all of the following elements: his disability, his qualification to perform the essential functions of his job, and the employer's failure to reasonably accommodate the disability. (*Scotch, supra,* 173 Cal.App.4th at pp. 1009-1010.) In addition, for the continuing violation doctrine to apply, Noroozi had to present an instance of failure to reasonably accommodate his

14

disability – depression – that took place between October 5 and October 9, 2014. But, as he was on leave during that period, no such instance could have occurred.[8]

The most recent "failure to accommodate" for which Noroozi presented evidence took place during September 2014. Noroozi and other City employees had a meeting on September 2, at which Noroozi discussed his "brain freezes" and asked for more time to complete his assignments. He later confirmed that additional time was the sole accommodation he was requesting. On September 30, 2014, City sent him a letter flatly refusing to afford him additional time. This established the permanence necessary to trigger the limitations period. Noroozi presented no evidence of any further refusal to accommodate him after that time.

### B.     Failure to Engage in Interactive Process

As the trial court pointed out, the employee must initiate the interactive process by requesting a meeting or otherwise communicating his desire to interact with the employer about his disability unless both the disability and the limitations are obvious. (See *Scotch, supra,* 173 Cal.App.4th at p. 1013.) Noroozi presented no evidence of any such request taking place between October 5 and October 9, 2014. As stated above, City made it very clear in September 2014 that it was not going to grant him additional time – over and above what he had already been granted – to finish his work.

### C.     Disability Harassment

Government Code section 12940, subdivision (j), prohibits harassment of any employee because of mental disability. "[H]arassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in

---

[8]     Noroozi criticizes this argument as follows: "How convenient it would be if an employer could place an employee on leave to insulate itself from an action by placing the employee on leave. [*Sic*.]" In this case, City had no control over when Noroozi would choose to file his DFEH complaint, as he could have done even before or while he was placed on leave. For example, City denied his request for accommodation in September 2014, *after* it had expressed its intention to fire him. It is not necessary to be fired before filing a DFEH complaint.

15

for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 63.) "Thus, harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706.)

In this case, it is important to focus on the mental disability from which Noroozi claimed to be suffering. It was depression. Noroozi asserted that depression interfered with his concentration – froze his brain – and therefore interfered with his ability to complete his tasks in a timely manner. The accommodation he requested was more time to do his work.

In *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, the court gave an example of the conduct that would meet the criteria for the continuing violation doctrine. After Yanowitz refused to carry out her superior's command to fire a sales representative for not being "hot" enough to suit him (*id.* at p. 1038), "L'Oreal began a campaign of retaliation that commenced with the solicitation of negative feedback from Yanowitz's subordinates in April 1998, continued with a refusal to accommodate those employees' administrative needs in May 1998, the presentation of unwarranted criticism and humiliation in the presence of these employees in June 1998, and an unwarranted negative written evaluation in a July 16, 1998 memorandum, and finally culminated with L'Oreal's refusal, after the transmittal of the July 16 memorandum, to allow Yanowitz time to respond to the charges leveled against her. [¶] In sum, Yanowitz alleges that in the course of these actions, L'Oreal solicited or fabricated negative information about Yanowitz and then used this information to intimidate, disempower, and punish Yanowitz. We conclude that a reasonable trier of fact could find that the solicitation of negative information from subordinates, the criticism of Yanowitz both verbally and in

16

written memos based in part on the negative information obtained from her subordinates, and the subsequent refusal to allow Yanowitz to answer the charges leveled against her, were similar in kind and occurred with sufficient frequency to constitute a continuous and temporally related course of conduct.  Moreover, a reasonable trier of fact could conclude Yanowitz was not on notice that further conciliatory efforts would be futile, until her final attempts to meet with company representatives to discuss the criticism directed at her were finally rebuffed." (*Id.* at p. 1059.)  The final attempts to meet with company representatives occurred within the statutory period.  (*Id.* at p. 1056.)

*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390 (*Jumaane*) gives another example of conduct that could be considered sufficiently similar and close in time to qualify for application of the continuing violation doctrine.  In that case, the plaintiff, a fire fighter, asserted that he had been the victim of racial discrimination since the 1990's.  (*Id.* at p. 1400.)  He filed his DFEH complaint in April 2002.  (*Id.* at p. 1395.)  The reviewing court found that plaintiff's evidence satisfied the doctrine's first two elements – similarity and frequency – but the evidence showed that by mid-1999, he "no longer had any hope 'that somebody would listen to reason and not be tainted.'"  (*Id.* at p. 1403.)

The evidence of racial discrimination that established the similarity and frequency elements of the continuing violation doctrine there was a series of unsatisfactory evaluations, reprimands, charges of misconduct, and demands for reports throughout the 1990's, all issued after the plaintiff had protested racism in the Los Angeles Fire Department.  Efforts to counteract them through the union grievances process failed.  This was, according to the court sufficient evidence of similar and reasonably frequent incidents.  (*Jumaane, supra,* 241 Cal.App.4th at p. 1403.)

In our case, the *sole* incident Noroozi claims to have occurred within the limitations period is the termination itself in October 2014.  The conduct upon which his claim of disability harassment rested, however, was not being fired.  It was harassing him

17

for needing more time to finish his tasks because his depression caused "brain freezes." He presented no evidence that any such harassment took place between October 5 and October 9, 2014, so the continuing violation exception cannot be invoked.

Noroozi had other complaints about his supervisors. For example, he asserted that one reason the design manual updates took so long was that he and his supervisor at the time disagreed about what should be in it. They also disagreed about who should do the work – outside consultants or Noroozi himself.

But harassment does not consist of "conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." (*Reno v. Baird* (1998) 18 Cal.4th 640, 646, superseded by statute on other grounds.) A great deal of the "harassment" of which Noroozi complains falls into this category, for example, his disagreement with his supervisor about the content of the updates, his various disciplines for failing to meet deadlines after being given extra time, his unsatisfactory performance in customer support.

In short, Noroozi failed to present evidence of a triable issue of fact that anyone harassed him because his disability – depression – interfered with his concentration during the five days between October 5 and October 9, 2014. This was the sole disability for which he presented any evidence. It was not sufficient, and the court correctly found that this cause of action was time barred.

III.        **Other Grounds for Summary Judgment**

Expiration of the limitations period was not the trial court's only basis for granting City's motion for summary judgment. The court granted summary judgment on the causes of action for age and disability discrimination on the ground that City had demonstrated a non-pretextual reason for terminating Noroozi – his inability to perform his job even with accommodations – and Noroozi had failed to present evidence that this reason was pretextual. (See *Scotch, supra,* 173 Cal.App.4th at pp. 1004-1006.) The court noted that Noroozi did not dispute the reasons for his termination as set forth in

18

City's notice of intent to dismiss and that the additional material facts in his opposition separate statement did not present any evidence of pretext.

The court granted summary judgment on Noroozi's cause of action for FEHA retaliation on the ground that (1) he did not engage in any protected activity and (2) when asked in discovery to state all facts supporting his claim that City retaliated against him because of age or disability, he failed to provide any such facts. Engaging in protected activity is an essential element of a retaliation claim. (*Yanowitz v. L'Oreal USA, Inc., supra,* 36 Cal.4th at p. 1042.) Noroozi's failure to present evidence of a triable issue of fact regarding engaging in protected activity required the court to grant summary judgment on this cause of action.

The court granted City's motion for summary judgment on Noroozi's whistleblower retaliation claim (Lab. Code, § 1102.5) because the sole incident about which Noroozi blew a whistle concerned an electrical accident that he knew about only because it was reported in newspapers. Reporting publicly known information is not whistleblowing. (*Mize-Kurzman v. Marin Community College Dist*. (2012) 202 Cal.App.4th 832, 858-859.)

Summary judgment on Noroozi's CFRA cause of action was granted because Noroozi presented no evidence that he had ever asked City for a CFRA leave of absence.[9] Instead, he originally asked for "additional time" to perform his duties, "clear structured procedures to follow," and "reduced level of stress[.]" City never "refused to grant a request" by Noroozi to take any time off for "family care and medical leave."

The court granted summary judgment on non-FEHA related intentional infliction of emotional distress on the ground that an employee's work-related emotional

___

[9] Government Code section 12945.2, subdivision (a), provides in pertinent part: "It shall be an unlawful employment practice for any employer, as defined in paragraph (4) of subdivision (b), to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period or who meets the requirements of subdivision (r), to take up to a total of 12 workweeks in any 12-month period for family care and medical leave."

distress claim must be dealt with in the workers' compensation system. (See *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902-903.) And because summary judgment had been granted on the FEHA claims, there were no longer any such claims to support emotional distress damages.

Noroozi's opening brief addresses none of these grounds for granting summary judgment, which rested for the most part on his failure to meet his burden as an opposing plaintiff to provide admissible evidence of a triable issue of fact.[10] His failure to address them on appeal, as stated above, means that he does not challenge the court's rulings on these grounds, which support the granting of summary judgment independently of the expiration of the limitations period. (See *Shuler v. City of Los Angeles* (2021) 62 Cal.App.5th 793, 800.)[11]

---

[10] Noroozi addressed his cause of action under the Whistleblower Protection Act in an unintelligible footnote. This is, in our view, the equivalent of abandoning it.

[11] Noroozi also raises for the first time on appeal the issue on whether the amendment to Government Code section 12960, which became effective on January 1, 2020, and which extended the limitations period from one year to three years, is retroactive. Although we have discretion to consider a question of law for the first time on appeal, we decline to do so here. (See *Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44-45 [discretion should be exercised rarely and only on important legal issues].) As the trial court pointed out in its ruling, "[T]here is no indication or discussion by the parties as to whether the new statute is retroactive. Indeed, both parties appear to agree that the one year statute of limitations applies."

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


                              BEDSWORTH, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.